PEOPLE v. INMAN.

1. CRIMINAL LAW—ASSISTANCE OF COUNSEL.

While one accused of crime is entitled to the presence and assistance of counsel at every stage of the trial, it may not be error to proceed with the trial in counsel's absence if the accused is not thereby prejudiced.

2. SAME—ABSENCE OF COUNSEL—READING OF TESTIMONY TO JURY—PREJUDICE.

Where counsel was expressly granted permission by the court, and presumably by defendant, charged with statutory rape of his nine-year-old daughter, to depart from the trial after the case had been submitted to the jury and, during counsel's absence, jury returned and requested that certain corroborative testimony of the girl's mother who was the complaining witness be read and there does not appear to have been any cross-examination on such subject, jury's request was properly granted over defendant's objection where it is apparent that defendant was not prejudiced by such action (Act No. 328, § 520, Pub. Acts 1931).

3. EVIDENCE—REMOTENESS.

Whether or not testimony should be excluded on the ground of remoteness in time must be determined in the light of all the facts and circumstances as disclosed by the record.

4. SAME—PHYSICAL CONDITION AT PRIOR OR SUBSEQUENT TIME—DISCRETION OF COURT.

In showing the existence of any physical condition at a given time, the existence of such a condition at a prior or subsequent time is evidential and the limits of time over which such evidence may range must depend on the circumstances of each case as to the probability of intervening changes and should be left entirely within the discretion of the trial judge.

5. SAME—REMOTENESS—WEIGHT OF EVIDENCE—ADMISSIBILITY.

Remoteness ordinarily affects the weight, rather than the admissibility, of evidence.

6. SAME—ESSENCE OF REMOTENESS.

Remoteness of evidence is a matter of degree and its essence is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in proof of the latter.

7. SAME—REMOTENESS—TIME—MATERIALITY.

While remoteness, as the term characterizes evidence, has regard to factors other than mere lapse of time, when the question of remoteness arises in connection with the matter of time, to be admissible evidence must not be so remote in point of time as to be immaterial.

8. RAPE—STATUTORY RAPE—PHYSICIAN'S TESTIMONY—ISSUE OF PENETRATION.

In a prosecution for statutory rape the testimony of a physician who has examined the girl, showing the condition of the parts, is an important piece of evidence as bearing upon the question of the essential fact of penetration (Act No. 328, § 520, Pub. Acts 1931).

9. CRIMINAL LAW—STATUTORY RAPE—EXAMINATION BY PHYSICIAN —REMOTENESS.

In prosecution for statutory rape of defendant's nine-year-old daughter, it was not error to admit testimony of physician who examined the girl nearly two years after the alleged offense, where his testimony was that the girl had had sexual relations and she testified that she had not had sexual relations with anyone else and that she had refrained from telling her mother

because of threats made by defendant, as the matter of remoteness affected the weight rather than the competency of the testimony (Act No. 328, § 520, Pub. Acts 1931).

10. SAME—STATUTORY RAPE—EVIDENCE—CORROBORATION OF VICTIM.
In prosecution for statutory rape of defendant's nine-year-old daughter, evidence which included some corroboration of daughter's testimony was sufficient to permit jury to find defendant guilty notwithstanding it appears that there was much conflicting testimony and bitterness on part of complaining witness, his wife, from whom he was separated at time of trial about two years after the alleged offense, although a conviction for rape may be sustained without corroboration of the victim (Act No. 328, § 520, Pub. Acts 1931).

11. SAME—VERDICTS—WEIGHT OF EVIDENCE.
A verdict in a criminal case is not against the weight of the evidence where the testimony presents fair issues of fact for the jury and would have justified a verdict either of guilty or not guilty.

12. SAME—REMARKS BY COURT—PREJUDICE—ADMONITION OF WITNESSES.
Although a trial court has the authority to insist that a case be tried in a proper and orderly manner, where defendant's counsel sought to have court admonish mother of girl upon whom defendant was alleged to have committed statutory rape and court remarked that if he was "going to start in admonishing people for uncalled-for demonstrations it will have to reach to the counsel table too," such remark *held*, too trivial to constitute prejudicial error, as it does not clearly appear that it referred to conduct of defendant's counsel and he made no attempt to clarify the situation.

13. SAME—STATUTORY RAPE—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.
Where, on motion for new trial in prosecution for statutory rape, trial court investigated matter of claimed improper relations of the girl with others than defendant as stated in four affidavits and came to conclusion that affiants who testified as witnesses on the motion were merely trying to help defendant and that the claims were untrue, denial of a new trial on ground of such alleged newly-discovered evidence *held*, justified (Act No. 328, § 520, Pub. Acts 1931).

14. SAME—NEW TRIAL—DISCRETION OF COURT.
The grant or refusal of a new trial in a criminal case generally rests in the sound discretion of the trial court; such discretion being exercised to promote justice and protect the innocent.

15. NEW TRIAL—DISCRETION OF COURT—BASIS OF MOTION.

A trial court in exercising its discretion as to the grant or refusal of a new trial has the power to determine the truth or materiality of the matters upon which the motion is based independently of the action taken by the jury.

16. CRIMINAL LAW—NEW TRIAL—DILIGENCE—AVAILABILITY OF AFFIANTS.

Where all of the affiants who signed affidavits in support of defendant's motion for new trial were not shown to have been unavailable in interval between defendant's arrest, arraignment, and trial held less than a month later, there was such a lack of diligence in the procurement of their testimony as to preclude finding of reasonable diligence on part of defendant, hence his motion for new trial on charge of statutory rape of his own daughter was properly denied (Act No. 328, § 520, Pub. Acts 1931).

17. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

In order to obtain a new trial upon the ground of newly-discovered evidence it should be shown that the evidence, and not merely its materiality, be newly discovered; that the evidence be not cumulative merely; that it be such as to render a different result probable on a retrial of the cause and that the party could not with reasonable diligence have discovered and produced it at the trial.

Appeal from Iosco; Dehnke (Herman), J. Submitted June 13, 1946. (Docket No. 52, Calendar No. 43,170.) Decided September 11, 1946.

George Inman was convicted of statutory rape. Affirmed.

*McGregor & Traycik* (*Smith & Cummings,* of counsel), for appellant.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Herbert Hertzler,* Prosecuting Attorney, for the people.

CARR, J. Defendant was tried and convicted by a circuit court jury under an information charging

him with the crime of statutory rape * on his nine-year-old daughter, Rosalie Inman. The offense was charged to have been committed in Plainfield township, Iosco county, September 6, 1942. The prosecution was instituted by complaint made by the mother of the girl on April 3, 1944. The girl Rosalie, hereinafter referred to for brevity as the prosecutrix and as the complaining witness, testified that she did not disclose defendant's conduct until a short time before the complaint was made, claiming that defendant told her not to do so, and that he threatened to kill both prosecutrix and her mother if his conduct was revealed. In the spring of 1944 defendant and his wife had separated and the girl, Rosalie, was living with a married sister. Rosalie claimed in her testimony on the trial that she was informed that defendant was planning to obtain her custody, that she was greatly disturbed by such information, and that she told her mother of defendant's prior misconduct.

For some time prior to and on the date alleged in the information prosecutrix and her mother lived in a cabin near Hale, Michigan. Defendant worked in Bay City during the week, but usually spent his week ends at the home. There were no facilities for obtaining water at the cabin where the parties resided and they, customarily, went to an adjoining vacant farm, known as the "Hutchinson place," for that purpose. On the day of the alleged offense the girl, Rosalie, went with defendant for the purpose of obtaining water. She testified that after the water can had been filled she and defendant went behind a shed on the premises and that defendant there committed the offense charged against him. She claimed further that following the act of inter-

* See Act No. 328, § 520, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–520, Stat. Ann. § 28.788).

course she heard her mother calling her and that she ran to meet her mother. Mrs. Inman corroborated the testimony of Rosalie in this respect, testifying further that the girl was crying as she came toward her. Rosalie also claimed other acts of like character on defendant's part prior to September 6, 1942. Defendant testified in his own behalf, denied his guilt of the offense alleged in the information, and also denied the other acts to which Rosalie testified.

Following the verdict of the jury defendant moved for a new trial, asserting that the verdict was against the weight of the evidence, that prejudicial errors were committed in the course of the trial, and that he had obtained newly-discovered evidence which might raise a reasonable doubt as to his guilt on a retrial. The motion was denied, sentence was imposed by the trial court, and defendant has appealed.

After the case had been submitted to the jury, counsel for defendant advised the court that he wished to make a trip to Dearborn, Michigan. The court consented to counsel's departure, stating, in substance, that if the jury desired additional instructions, the charge as given would be repeated. Thereupon counsel left the court for the purpose of making the desired trip. In his absence the jury requested that certain testimony be read to them. Defendant objected on the ground that his attorney was not present. On behalf of defendant it is claimed that his counsel would have objected to the reading had he been present. In accordance with the request of the jury, testimony given by Mrs. Inman, the mother of Rosalie, with reference to the girl crying as she came to the witness following the commission of the alleged offense, was read, following which the jury again retired for further delib-

eration. The record does not indicate that there was any cross-examination on the specific matter referred to by the jury in the request.

On behalf of defendant it is claimed that the reading of the testimony in the absence of defendant's counsel constituted prejudicial error. No claim is made, however, that defendant objected to the departure of his counsel and the record fairly justifies the conclusion that he consented thereto. It is scarcely conceivable that counsel would have departed from the county without advising his client as to his contemplated action and without obtaining the client's approval or, at least, his acquiescence. Neither does it appear from the record before us that if counsel had been present in court he could or would have interposed any well-founded objection to the reading of the testimony.

In 23 C. J. S. p. 321, it is said:

"An accused is entitled to the presence and assistance of counsel at every stage of the trial; but it has been frequently held not to be error to proceed with the trial in counsel's absence if the accused is not thereby prejudiced."

In *People* v. *Kasem,* 230 Mich. 278, the jury, after submission of the case, returned to the court room and asked to have the testimony of a certain witness read to them. Counsel for defendant objected unless the testimony of two of defendant's witnesses was also read. It was held, in affirming the conviction, that defendant was not entitled to have his request granted as a matter of law and that there was no abuse of discretion on the part of the trial court in permitting the reading of the testimony of plaintiff's witness.

In *People* v. *Digione,* 250 Mich. 206, the trial court in charging the jury said:

"And if, at any time, there is a difference of opinion as to what the evidence is in the court, we have it all taken down and the stenographer will read it to you. Any point that you are differing about. Or, if you differ about the law, on any one question and one man says the court said so and so, and the other says, no, the court said so and so. Well, come in, and I will have the charge read to you."

During their deliberations the jury returned for further instructions and part of the charge as given was read in response to their request. It was held that this was not error, and the conviction was affirmed.

In *People* v. *LaMunion*, 64 Mich. 709, a portion of the charge as given by the court was read to the jury in the absence of both defendant and his counsel. It was held that defendant was not prejudiced by such action, citing among other cases, *Smith* v. *Kelly*, 43 Mich. 390, 393. It was stated that the trial court "kept clearly within the rule which should govern in such cases." See, also, *Behrendt* v. *Wilcox*, 277 Mich. 232; *Rich* v. *Daily Creamery Co.*, 303 Mich. 344. The general rule is summarized in 53 Am. Jur. p. 666, as follows:

"Independently of statute, according to the majority rule, the trial court, at the jury's request and over objection, may have the reporter read the testimony of a witness, including, in a criminal case, the testimony of the state's most important witness, or it may from its minutes state the substance of testimony."

Under the circumstances presented in the instant case it is apparent that defendant was not prejudiced by the absence of his counsel at the time the testimony in question was read to the jury. It was not incumbent on the court to delay the trial until

counsel returned before passing on the jury's request. Counsel took his departure with the permission of the court and, presumably, with the consent of the defendant, and the court was fully justified in proceeding in counsel's absence. The request of the jury for the reading of the specific testimony was properly granted.

Error is also assigned on the admission of the testimony of a physician who made a physical examination of Rosalie Inman approximately two months before the trial and nearly two years after the commission of the alleged offense. As before stated, the criminal prosecution against defendant was instituted in April, 1944. It is the claim of the people that the delay was due to the admonitions and threats of defendant, to which Rosalie testified on the trial. It was her testimony, also, that she had not had sexual relations with any man, or boy, other than defendant. The testimony of the physician was offered by the prosecution for the purpose of showing that the girl's physical condition was such as to indicate that she had had sexual relations. It is the claim of the defendant that, because of the length of time between the commission of the offense charged in the information and the examination by the physician, the testimony should have been excluded on the ground of remoteness. The trial court, in his opinion denying a new trial, indicated that he regarded the remoteness as going to the weight of the testimony rather than to its admissibility. The record does not disclose that any request to charge on the matter was submitted, and the general question as to the weight to be given to the testimony of various witnesses was left to the jury.

At the time the examination was made by the physician the girl, Rosalie, was 11 years of age. The testimony of the physician was in substance that

the physical condition found meant that ''she had
had intercourse.''

It is the claim of the people, in substance, that
under the record, and particularly in view of the
testimony of Rosalie, it was permissible to show by
medical testimony the physical condition of the girl,
and that the lapse of time between the alleged acts of
intercourse, to which she testified, and the making of
the examination did not wholly destroy the eviden-
tiary value of the proof. Defendant's claim that
the testimony should have been excluded on the
ground of remoteness must be determined in the
light of all the facts and circumstances as disclosed
by the record.

In 2 Wigmore on Evidence (3d Ed.), p. 8, it is
said:

''In showing the existence at a given time of any
physical condition (skill, strength, health, or the
like), the existence of such a condition *at a prior or
subsequent time  *  *  **  is evidential. The limits
of time over which such evidence may range must
depend on the circumstances of each case as to the
probability of intervening changes, and should be
left entirely within the discretion of the trial judge.''

See, also, 4 Elliott on Evidence, pp. 424, 425.
Likewise, in 22 C. J. S. pp. 977, 978, it is said:

''While the trial court may, and in some instances
should, reject evidence which, although relevant or
deemed to be relevant, appears too remote to be
material, yet of course there are many instances in
which particular evidence has been held not inad-
missible on this ground; and ordinarily remoteness
affects the weight, rather than the admissibility, of
evidence. The question of excluding evidence be-
cause of remoteness rests largely in the sound dis-
cretion of the trial judge.

''Remoteness is a matter of degree. Its essence
is such a want of open and visible connection be-

tween the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in proof of the latter. The term is one which, has regard to factors other than mere lapse of time; and it is said that, while time may be a practically controlling feature in some situations, yet comparatively few generalizations based upon lapse of time alone can be made safely; that evidence which is relevant, as directly tending to prove a fact in issue, is not incompetent as immaterial merely because of remoteness in point of time; and that remoteness depends to a large extent on the nature of the case. Even where the evidence is very remote, the question must be determined by the circumstances. However, the question of remoteness so frequently arises in connection with the matter of time that it may be stated as a general rule that, to be admissible, evidence must not be so remote in point of time as to be immaterial."

Among cases cited in support of the foregoing statement is *People* v. *Niles,* 44 Mich. 606. There the defendant was prosecuted and convicted on a charge of assault with intent to kill and murder. A witness for the prosecution testified that more than a year prior to the alleged offense the defendant had a certain described knife in his possession. The testimony was objected to on the ground of remoteness, but it was admitted. In declining to hold that such admission was error it was said that, while the testimony was very remote, "the question how far back the prosecution shall be allowed to carry such inquiries must always be one of some difficulty, and must be determined by the circumstances."

In *People* v. *Scouten,* 130 Mich. 620, defendant was convicted of statutory rape. On the trial a physician testified to an examination made by him of the complaining witness and stated that "frequent

sexual intercourse with an adult male would cause the condition which he found." It was held that the testimony was competent upon the issue of penetration, the court saying:

"The testimony of the physician, showing the condition of the parts, is an important piece of evidence as bearing upon the question of fact."

See, also, *Walker* v. *State,* 12 Okla. Crim. 179 (153 Pac. 209), where the court in holding that the request of the defendant, in a statutory rape case, for a physical examination of the prosecutrix, should have been granted, said:

"If the private parts of the defendant entered those of the child, then only seven years of age, as the testimony of the state tends to show, the marks of penetration would be permanent and would be the best evidence of the actual commission of the crime charged."

In *Commonwealth* v. *Allen,* 135 Pa. 483 (19 Atl. 957), the defendant was charged with statutory rape on a 13-year-old girl. On the trial the people offered testimony of a physician, who examined the prosecutrix more than a year after the commission of the alleged offense, for the purpose of showing that her physical condition at the time of the examination was such as might have resulted from claimed acts of intercourse between her and the defendant. There, as in the case at bar, prosecutrix testified that she had not had sexual relations with any one other than the defendant. The court declined to hold that the admission of the testimony was error, although recognizing that the lapse of time affected the weight to be given to the evidence.

Defendant, in his brief, cites and relies on *State* v. *Houx,* 109 Mo. 654 (19 S. W. 35, 32 Am. St. Rep. 686); *State* v. *Evans,* 138 Mo. 116 (39 S. W. 462, 60

Am. St. Rep. 549); *People* v. *Egan,* 331 Ill. 489 (163 N. E. 357); *People* v. *Butler,* 55 App. Div. 361 (66 N. Y. Supp. 851). In *State* v. *Houx, supra,* the testimony that the court found objectionable did not tend to prove the perpetration of the crime of rape but rather was directed to the condition of the health of the prosecutrix following the commission of the alleged offense. It was held that the only possible effect of such testimony would be to arouse prejudice on the part of the jury. In the *Evans Case* the examination was made four months after the prosecutrix had passed the age of consent. It was held that the physical condition testified to by the physician did not tend to prove an act of intercourse while the girl was under the age of 14. Both of these cases were discussed in *State* v. *Scott,* 172 Mo. 536 (72 S. W. 897), in which the testimony of physicians who examined the prosecutrix, approximately four months after the commission of the alleged offense, was held to be competent. Commenting on the situation the court said:

"The medical witnesses were called simply to show the vagina had been penetrated and the parts lacerated, and they had no hesitancy in testifying such were the facts. It was simply a fact but not a conclusive one, tending to prove that the child had been raped. And in the light of the medical evidence we think it was competent evidence, and its remoteness, for the purpose it was offered, no ground for excluding it."

In *People* v. *Butler, supra,* defendant was prosecuted for rape on the person of a female under the age of 18 years. It was charged that the girl was 17 at the time the crime was committed. On behalf of the prosecution the people were permitted to introduce the testimony of a physician who examined the person of the prosecutrix 20 months after the

commission of the crime. Obviously here, as in *State* v. *Evans, supra,* the prosecutrix had passed the age of consent, by several months, before the examination was made. Whether this fact was taken into consideration in reaching the conclusion that the testimony was incompetent does not appear from the opinion in the case. Rather, emphasis was placed on the fact that the evidence as to the physical condition of the prosecutrix at the time of the examination did not tend to show that defendant had committed the crime of rape on her person on the date alleged in the indictment. While certain language in the opinion tends to support defendant's claim in the case at bar, we do not think that the decision may properly be regarded as controlling authority.

As before pointed out, the prosecutrix in the instant case was below the age of consent at the time the examination was made by the physician. On the trial it was essential that the prosecution prove some degree of penetration in order to establish the crime of rape. The testimony in question had reference to a material fact at issue in the case. It indicated a condition that might have resulted from the various acts of the defendant to which the girl Rosalie testified. Under the circumstances of the case, and bearing in mind the purpose for which the evidence was offered and received, it cannot be said that the lapse of time between the commission of the crime here charged and the making of the examination was such as to destroy all evidentiary value of the testimony. Rather, as indicated by the trial court, the remoteness went to the weight of the testimony rather than to its competency. There was, in consequence, no error in admitting the testimony, the weight to be given it being for the jury.

It is further contended that the verdict of the jury was improper under all the evidence in the case and should be set aside. The testimony of Rosalie Inman with reference to defendant's conduct was clear and unequivocal. The trial court in denying the motion for a new trial, said:

"I am bound to record it as my conviction that if Rosalie's testimony is false, she is, notwithstanding her youth and limited intelligence, the most accomplished and convincing giver of false testimony I have ever seen on the stand in such a case. She had every appearance of frankness and honesty. Her answers had the ring of truth and carried conviction, all the more effective by contrast with the attitude and testimony of every other member of the family who had contact with the case in any way."

Defendant testified in his own behalf and, as above stated, denied his guilt of the offense charged against him, and also denied the prior acts to which Rosalie testified. The testimony thus was squarely in dispute, and it was peculiarly within the province of the jury to weigh the testimony of each witness and to determine the truth as to the disputed matters. *People* v. *Beath,* 277 Mich. 473, *People* v. *Kowalek,* 296 Mich. 714.

It was defendant's theory on the trial that the charge against him had been manufactured by his wife, the mother of Rosalie. The record justifies the conclusion that Mrs. Inman entertained bitter feelings towards defendant and the record fairly indicates that her attitude was apparent during the trial. Doubtless, the jury was fully aware of the situation and the court specifically referred to it in his charge. It may be noted in passing, that there is no claim of error with reference to the submission of the case. Evidently, the jury believed the testimony of Rosalie and did not believe defendant's denial of his guilt.

It does not follow, however, that the verdict was not properly supported by the evidence.

As was said in *People v. Cleveland,* 295 Mich. 139, in affirming a conviction for rape, "it is not the province of this court to substitute our judgment for that of the jury on disputed questions of fact."

In *People v. Petrosky,* 286 Mich. 397, it was said:

"The jury was not bound to believe the witnesses who testified in favor of defendant's defense of alibi, as there was testimony to show the contrary. *State v. St. Clair,* 139 Wash. 428 (247 Pac. 461); and a jury may believe one witness as against many. *Baugh v. State,* 89 Ind. App. 283 (166 N. E. 264). It is the jury's province to determine the credibility of all of the witnesses, including those whose testimony tends to prove an alibi. *People v. Costello,* 320 Ill. 79 (150 N. E. 712). Where the testimony presents fair issues of fact for the jury and would have justified a verdict either of guilty or not guilty, the verdict is not against the weight of the evidence. *People v. Pratt,* 251 Mich. 243."

Counsel for defendant imply in their brief that a conviction in a case of this kind cannot be sustained unless the testimony of the prosecutrix is corroborated. Such, however, is not the general rule. In the notation following *Noonan v. State,* 60 A. L. R. 1118 (117 Neb. 520 [221 N. W. 434]), it is said:

"The rule in most jurisdictions is that in the absence of statute a conviction for rape may be sustained on the uncorroborated testimony of the prosecutrix."

In *People v. Miller,* 96 Mich. 119, the court, although pointing out that there were corroborating circumstances in the case, said:

"We are not prepared to say that conviction in rape cases cannot be based upon the uncorroborated

testimony of the woman assaulted. We see no reason for holding that the rule of the common law is changed by permitting the defendant to testify, and believe that the question of credibility can be safely left to the jury.''

In the instant case, however, it cannot be said that the testimony of Rosalie Inman was not corroborated. The testimony of the physician was offered and received for that purpose; and the mother of Rosalie gave evidence of corroborating circumstances. She testified to the fact that Rosalie and defendant went to the Hutchinson place to obtain water; that they were gone approximately one-half hour; that she went down the road calling to the girl; and that Rosalie was crying when she saw her. Rosalie also testified to having a kitten with her at the time the offense was committed. Mrs. Inman stated that on one occasion when Rosalie went with defendant to the Hutchinson place the girl lost her kitten, and that this episode was about Labor day, in the fall of 1942. It may be noted, also, that defendant admitted making trips to the Hutchinson farm with the girl, to obtain water, and referred to the fact that on one occasion the girl had a kitten with her, which was lost. There was some evidence, at least, of circumstances tending to corroborate the testimony of the prosecutrix.

In *People* v. *Randall*, 133 Mich. 516, the defendant was convicted of statutory rape. It was there held that the conduct of the defendant indicated a fear of prosecution, and that the testimony relating to such conduct tended to corroborate the charge. Commenting on the situation, it was said:

''The case was peculiarly one for a jury. Evidently they believed the child and disbelieved her uncle. Her surroundings, the habits of life, and want of care over her, of her mother, subjected

her to unusual dangers. The responsibility for this conviction rests upon the jury, where it properly belongs, and we cannot say that the verdict was not just. It evidently met the approval of the learned circuit judge who heard the cause, and who would doubtless refuse to permit a grossly improper verdict to stand."

The comment of the court above quoted is applicable in the instant case. An examination of the record indicates that the case was carefully tried and properly submitted to the jury. In view of the dispute in the testimony the questions at issue were for the determination of the jury, and it cannot be said that the verdict was not properly supported by the proofs. See *People* v. *Lowenstein,* 309 Mich. 94.

Error is also assigned on a remark made by the court during the progress of the trial. At the time, Emma Peters, a witness for defendant, was on the witness stand. Counsel for defendant addressed the court, calling attention to Mrs. Inman, mother of Rosalie, in substance accusing Mrs. Inman of "carrying on" and "trying to laugh us out of court." Counsel requested that Mrs. Inman be admonished. Thereupon the court said:

"Well if the court is going to start in admonishing people for uncalled for demonstrations it will have to reach to the counsel table too, I am sorry to say. Proceed with your examination of the witness."

It is contended that the logical effect of the court's remark was to discredit defendant's attorney before the jury. In his opinion denying the motion for a new trial the court indicated that at times during the presentation of proofs members of defendant's family were seated at counsel's table, and that the

conduct of certain members of the family, including Mrs. Inman, showed emotional tendencies. The record does not disclose what prompted the court's remark. Neither does it clearly appear that it had reference to counsel's conduct. No attempt was The trial court was invested with authority to insist made by counsel to explain or clarify the situation. that the case be tried in a proper and orderly manner. See *People* v. *Ecarius,* 124 Mich. 616; *People* v. *Kreidler,* 180 Mich. 654. On this record it cannot be said that the court abused his prerogatives, or that defendant was prejudiced by the statement made. The incident was too trivial to come within the category of prejudicial error.

Did the trial court abuse his discretion in denying the motion for a new trial? Said motion was based on the claim that the verdict was against the weight of the evidence, on the alleged errors above considered, and on a claim of newly-discovered evidence. The claim in the last respect was supported by an affidavit made by Emma Peters, defendant's daughter, and a witness in his behalf on the trial, alleging that several years before, affiant discovered the complaining witness and her brother engaging in an act of intercourse. Subsequently, four additional affidavits were filed, the affiants being young boys who claimed that in prior years they had had sexual relations with Rosalie Inman. On the hearing of the motion these affiants testified in open court, in the main reiterating the statements contained in the affidavits. The young man referred to in the affidavit of Emma Peters was interviewed by the court and also testified as a witness on the motion. However, he denied the occurrence claimed to have been witnessed by Mrs. Peters.

It is apparent from the record that the trial court went into the matter very fully and carefully. He

had the advantage of seeing and hearing the affiants and of noting their demeanor on the witness stand. It was his conclusion, as set forth in the opinion denying the motion, that the claims made as to improper relations on the part of Rosalie with others than defendant were based on a desire to help the defendant, and that such claims were untrue. It cannot be said that this conclusion was not fully justified. One of the boys referred to, who was 13 years of age when he appeared in court, claimed an act of intercourse with Rosalie some 8 years before, when he was 5 and Rosalie 3 or 4 years old. Another testified that in the fall of 1937, when he was 7 or 8 years old, and Rosalie was four, he indulged in similar conduct with her. The testimony offered in defendant's behalf on the hearing of the motion, if true, indicates scarcely credible conduct on the part of young children. Further discussion of the claims made by these witnesses would serve no useful purpose.

The affidavit of Emma Peters, filed in support of the motion for a new trial, is impeached by a counter-affidavit of an officer of the Michigan State police, who administered polygraph tests to certain of the witnesses. Mrs. Peters was not given the test, but the affidavit referred to sets forth that she was questioned by the deponent and stated to him that she did not tell the truth in testifying at the trial, and also that statements contained in her affidavit were false.

On the trial of the case Rosalie Inman was asked on cross-examination whether she had had improper relations with certain men. She denied such relations and no proofs were offered to dispute her testimony in this respect, although obviously the proofs offered by the people opened the door to such inquiry. It is apparent that defendant and his counsel

had in mind on the trial the matter of the possibility of relations between Rosalie and men other than defendant. It may be doubted, also, if Rosalie could have indulged in the course of conduct now claimed by defendant without defendant having had some knowledge of the situation. In fact, one of defendant's alleged newly-discovered witnesses claimed that he heard Mrs. Inman tell defendant of improper conduct between Rosalie and one of the boys above mentioned.

In 23 C. J. S. pp. 1119–1121, it is said:

"The grant or refusal of a new trial generally rests in the sound discretion of the trial court. Such discretion, however, is not mere whim or caprice, but the exercise of a deliberate judgment, founded on well-established principles, and having for its object the promotion of justice and the protection of the innocent. In exercising its discretion, the trial court has the power to determine the truth and materiality of the matters upon which the motion is based; and the exercise of this discretion cannot be controlled by recommendations of the jury that a new trial be granted. In ruling on a motion for a new trial, the trial court must in fact exercise its discretion and such discretion has been said to be perhaps the greatest protection of accused against the mistakes and prejudice of the jury."

In *People v. Ecarius, supra,* 626, this court said:

"In this case the trial judge saw the witnesses who were sworn, and he doubtless knew many of those whose affidavits were filed both for and against a new trial, and would possess better means of deciding upon the weight to be given to these affidavits. A careful reading of the record, the affidavits, and the counter affidavits does not satisfy us that the trial court erred in the exercise of his discretion in refusing a new trial."

Likewise, in *People* v. *English,* 302 Mich. 463, the court, in discussing the rule with reference to granting of a motion for new trial on the ground of newly-discovered evidence, said:

"The granting of a new trial on this ground is discretionary with the trial court. *People* v. *Tucker,* 222 Mich. 564; *People* v. *Prag,* 261 Mich. 686; *People* v. *Serra,* 301 Mich. 124. And after a careful examination of the affidavits in support of the motion we fail to find that there has been an abuse of judicial discretion. We are not convinced from a reading of the statements that a different result would be reached upon retrial. *People* v. *Mangiapane,* 219 Mich. 62. The statements of the affiants are not persuasive, as three of them state that they had their recollections refreshed by a conversation with the Weavers, and the affidavits of the Weavers would not exclude the guilt of defendant when read in conjunction with the testimony taken upon the trial.

"Furthermore, there appears a lack of diligence in securing the testimony. *People* v. *Hallman,* 299 Mich. 657. Defendant was arrested on March 15, 1941, and the trial was not held until the 22d and 23d days of the following September. All of the proffered witnesses were available during this interval and there is no showing that the testimony could not have been produced at the trial."

The statement by the court in the above case is applicable here. There is no showing that by the exercise of reasonable diligence defendant could not have produced these witnesses on the trial. As before noted, Mrs. Peters testified in defendant's behalf and the conclusion is fully justified that she was anxious to assist him in every way possible.

A somewhat similar situation was presented in *People* v. *Millen,* 248 Mich. 520, where it was said:

"So we may assume that unless this new evidence was framed up for the occasion after the conviction, it was known to the defendant and his counsel and with reasonable diligence could have been procured at the trial. But considering its quality and the clear, convincing evidence of guilt as shown by the record, we are convinced that if a new trial were had no different result would follow. The trial court made no mistake in denying the motion."

In holding that a motion for a new trial on the ground of newly-discovered evidence was properly denied, this court said in *Canfield* v. *City of Jackson,* 112 Mich. 120:

"To entitle one to a new trial upon this ground it should be shown: First, that the evidence, and not merely its materiality, be newly discovered; second, that the evidence be not cumulative merely; third, that it be such as to render a different result probable on a retrial of the cause; fourth, that the party could not with reasonable diligence have discovered and produced it at the trial."

See, also, *People* v. *Pizzino,* 313 Mich. 97.

The record shows that the information against defendant was filed September 26, 1944, at which time he was arraigned. The trial began October 19th following. The name of the physician was endorsed on the information as a witness for the people. Defendant and his counsel were, therefore, charged with notice that the physician would be called to testify, and counsel should have anticipated that his testimony would be offered in corroboration of the claims of the prosecutrix with reference to her relations with defendant. There is no showing that the witnesses defendant now wishes an opportunity to have testify before a jury on a retrial could not have been produced. In fact, as pointed out by the trial court in his opinion denying a new

trial, the only inference that can be drawn from the record is directly to the contrary.

We conclude that the trial court did not abuse his discretion in denying the motion, that his conclusion as to the credibility of the witnesses in question was fully justified, and that the failure to produce the witnesses on the trial was due to a lack of diligence on the part of defendant.

We find no reversible error in the case and the conviction and sentence are affirmed.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred. STARR, J., took no part in the decision of this case.