THE STATE OF WYOMING,

*Plaintiff and Respondent,*

vs.

CAROL F. KOCH,

*Defendant and Appellant.*

(No. 2380; January 27th, 1948; 189 Pac. 2d 162)

176

Ivan S. Jones and Patrick J. Quealy, both of Kemmerer, for appellant.

Norman B. Gray, Atty. Gen., and John S. Miller, Deputy Atty. Gen., for respondent.

For the Defendant and Appellant, the cause was submitted upon the brief and also oral argument of Ivan S. Jones and Patrick J. Quealy, both of Kemmerer, Wyoming.

For the Plaintiff and Respondent, the cause was submitted upon the brief of Norman B. Gray, Attorney General, and John S. Miller, Deputy Attorney General, both of Cheyenne, Wyoming, and also oral argument by Mr. Miller.

## OPINION

BLUME, Justice.

Carol K. Koch, defendant in this case was convicted of having had carnal knowledge of Stella June Koch, a girl under the age of eighteen years, and from sentence pursuant to the conviction the defendant has appealed.

Stella June is the daughter of one Walter C. Brewer. The latter's wife, mother of Stella June, divorced the latter, and she subsequently, about 1937, married the defendant. In 1943, Stella June, for convenience called the prosecutrix, and her twin sister and younger brother were adopted by the defendant.

The prosecutrix testified that the crime charged was committed in the Hockett apartments in Pinedale, Wyoming, about June 28, 1944, and that she had had sexual intercourse with the defendant previously without stating any dates. The information herein was filed on May 27, 1946. But it appears that defendant was arrested on another information apparently charging the same crime about September 11, 1945, shortly after the defendant had left his wife. Defendant's wife thereafter got a divorce from defendant.

1. It is assigned as error that the court permitted Stella June Koch to testify, over objection, to alleged previous acts of sexual intercourse. We do not think that that question is open in this state. Strand vs.

State, 36 Wyo. 78, 252 Pac. 1030; State vs. Quirk, 38 Wyo. 462, 268 Pac. 189. There is an annotation upon the subject in 167 A. L. R. 574, where it is stated: "In most jurisdictions it is recognized that in prosecutions for statutory rape, or rape of a female under the age of consent or otherwise unable to consent, evidence is admissible which tends to show prior offenses of the same kind committed by the defendant with the prosecuting witness, such evidence being admitted in corroboration of the offense charged or to prove identity, and not to prove a separate offense." And in 44 Am. Jur. 950, it is said: "The doctrine must now be considered as fairly well settled by the weight of authority that in prosecutions for rape upon one under the age of consent, acts of sexual intercourse between the parties prior to the act charged in the indictment may be given in evidence as tending to sustain the principal charge, by showing the relation and intimacy of the parties, and their disposition and antecedent conduct toward each other, and as corroborative of the testimony of the prosecutrix touching the particular act relied upon for a conviction."

2. On November 16, 1946, two physicians examined the prosecutrix and they were permitted to testify that the sexual organs of the prosecutrix had been penetrated and her hymen was absent. The examination was made some 27 or 28 months after the alleged crime in this case and error is assigned that the evidence was too remote and should not have been permitted. The court permitted the testimony on the theory that remoteness went to the weight and not to the competency of the testimony. It has been held that such testimony does not show that the defendant is guilty of the crime with which he is charged, and should not be admitted if the examination is made 18 months after the date of the crime charged. People vs. Butler, 55 App. Div. 361, 66 N. Y. S. 851. And if an instruction had been asked,

limiting the purpose for which the testimony was admitted it should probably have been given. No such instruction was asked. It is said in 22 C. J. S. 977, Sec. 638:

"While the trial court may, and in some instances should, reject evidence which, although relevant or deemed to be relevant, appears too remote to be material, yet of course there are many instances in which particular evidence has been held not inadmissible on this ground; and ordinarily remoteness affects the weight, rather than the admissibility, of evidence. The question of excluding evidence because of remoteness rests largely in the sound discretion of the trial judge. "Remoteness is a matter of degree. Its essence is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in proof of the latter. The term is one which has regard to factors other than mere lapse of time; and it is said that, while time may be a practically controlling feature in some situations, yet comparatively few generalizations based upon lapse of time alone can be made safely; that evidence which is relevant, as directly tending to prove a fact in issue, is not incompetent as immaterial merely because of remoteness in point of time; and that remoteness depends to a large extent on the nature of the case. Even where the evidence is very remote, the question must be determined by the circumstances. However, the question of remoteness so frequently arises in connection with the matter of time that it may be stated as a general rule that, to be admissible, evidence must not be so remote in point of time as to be immaterial."

The case of The People vs. Egan, 331 Ill. 489, 163 N. E. 357, cited by counsel for the defendant is not in point. The two Missouri cases which they cite were reviewed in the case of State vs. Scott, 172 Mo. 536, 72 S. W. 897. In that case physicians were permitted to give testimony similar to that in the case at bar when 4 months had elapsed after the alleged commission of the crime, and it was held that the cases cited by counsel herein

were not in point, the court saying: "The medical witnesses were called simply to show the vagina had been penetrated and the parts lacerated, and they had no hesitancy in testifying such were the facts. It was simply a fact, but not a conclusive one, tending to prove that the child had been raped; and in the light of the medical evidence we think it was competent evidence, and its remoteness for the purpose it was offered was no ground for excluding it." In the case of Commonwealth vs. Allen, 135 Pa. 483, 19 Atl. 957, the physicians examined the prosecutrix about 18 months after the alleged commission of the crime and they were permitted to testify to the result of the examination. The evidence was held not incompetent, but the court instructed that the delay weakened the testimony of the physicians. The latest case on the subject so far as we have found is the case of People vs. Inman, 315 Mich. 456, 24 N. W. 2d 176, which presents many features like that in the case at bar. In that case the prosecutrix testified that she had had no sexual intercourse with any man except the defendant. That does not exactly appear in the case at bar, but evidence in effect similar to that appears in the record. The defendant had testified that the prosecutrix had had intercourse with her brother Bobby at the time when he was 15 years old. That was denied by the prosecutrix, and it further appears by her testimony and that of her sister that she kept company with no one between the time of the alleged crime and the time of the trial herein; in other words, that there was no opportunity that her vagina could have been penetrated by anyone else during that period of time. In the Inman case, supra, the examination of the physicians was made approximately 2 months before the trial and nearly 2 years after the commission of the alleged offense. The court, reviewing most of the authorities upon the subject in question here, concluded that the

admission of the testimony of the physicians in that case should not be held to be error. The court stated, among other things: "On the trial it was essential that the prosecution prove some degree of penetration in order to establish the crime of rape. The testimony in question had reference to a material fact at issue in the case. It indicated a condition that might have resulted from the various acts of the defendant to which the girl Rosalie testified. Under the circumstances of the case, and bearing in mind the purpose for which the evidence was offered and received, it cannot be said that the lapse of time between the commission of the crime here charged and the making of the examination was such as to destroy all evidentiary value of the testimony. Rather, as indicated by the trial court, the remoteness went to the weight of the testimony rather than to its competency. There was, in consequence, no error in admitting the testimony, the weight to be given it being for the jury." It is true that in that case the testimony was offered for the purpose of showing that the girl's physical condition was such as to indicate that she had had sexual relations. When the testimony of the physicians was offered in this case it was offered generally without stating the purpose. If, however, it was admissible for any purpose it was properly received although, as stated before, if an instruction had been asked limiting the purpose for which the testimony was introduced it should probably have been given. In view of the fact that no such instruction was asked and in view of the fact of the testimony tending to show a lack of opportunity of prosecutrix to have sexual intercourse with anyone else, we think we are constrained to hold that there was no error in receiving the testimony here in question.

3. The defendant sought to show by the witness Cora E. Roberts that the reputation of the prosecutrix

for chastity was bad. The court excluded the evidence, and that is assigned as error here. It is the theory of the counsel for the defendant that the testimony was admissible for the purpose of affecting the credibility of the prosecutrix, and also to explain or overcome the testimony of the physicians that the prosecutrix had had sexual relations. While there is a conflict in the authorities (52 C. J. 1083), the weight of authority is that such testimony, except perhaps in a case of extreme immorality of the prosecutrix, is not admissible for the purpose of affecting the credibility of the prosecutrix. The People vs. Gray, 251 Ill. 431, 96 N. E. 268; Nickels vs. State, 90 Fla. 659, 106 So. 479; State vs. Eberline, 47 Kans. 155, 27 Pac. 839; The People vs. Glover, 71 Mich. 303, 38 N. W. 874; Hall vs. State, 43 Tex. Cr. R. 479, 66 S. W. 783; Note 75, 52 C. J. 1083; Note 11, 44 Am. Jur. 963; Note 140 A. L. R. 375; Note 48 L. R. A. N. S. 272. Nor do we think that such testimony would in any way explain or contradict the testimony of the physicians above mentioned. Duvall vs. State, 151 Md. 38, 133 Atl. 833. If in fact the reputation of the prosecutrix for chastity was bad that might have arisen out of her illicit relations with the defendant. Reading over the testimony of the witness Cora E. Roberts it seems probable that if she had testified to the malodorous reputation of the prosecutrix for chastity it would have been based upon the fact that the prosecutrix told her of her illicit relations with the defendant on or about September 11, 1945. Testimony of specific illicit relations or lewd conduct with persons other than the defendant would, of course, stand upon a different footing. State vs. Quirk, 38 Wyo. 462, 268 Pac. 189; annotation 140 A. L. R. 367.

4. The court in instruction No. 5 instructed the jury as follows:

"You are instructed that the State is not required to prove the exact date of the alleged crime, but the State

is required to prove the exact offense charged in the information and to prove that offense was committed on the date elected by the State, and cannot establish the commission of the act charged by the mere proof of other and similar acts, and evidence of the commission of other and similar acts is only to be considered for the purpose of showing the probability of the act charged. The State has elected to prosecute this defendant for an act committed on or about the 28th day of June, 1944, in the Hockett Apartment in the town of Pinedale, Wyoming. The defendant has introduced evidence that neither he nor the prosecutrix was in the Hockett Apartment on or about the 28th day of June, 1944. If after considering all of the evidence you have a reasonable doubt that the defendant committed the rape on or about the 28th day of June, 1944, then, even if you believe that the defendant committed the act at some other time or place, you must acquit the defendant, and return a verdict of not guilty."

Counsel for the defendant argue that this instruction was erroneous on account of the fact that it did not require the jury to find that the crime was committed exactly on the 28th day of June, 1944, and that the court erroneously used the phrase "on or about". However, no exception was taken to this instruction. Counsel for defendant apparently were satisfied with it at the time of the trial, and it seems a little bit late to make complaint of it at this time. Counsel for defendant seem to think that the court must always at its peril give correct instructions, whether objected to or not. But counsel are wrong. It is said that "generally, it is not only the right but also the duty of accused to raise objection if he wishes to take advantage thereof." 23 C. J. S. 1000-1001. There are exceptions to that rule, but they are not, we think, applicable in this instance. Aside from that, however, it is undoubtedly true that the defendant could be convicted of only one crime and that where a number of similar acts appear in the testimony, an election must be made on which of the acts the state relies for conviction. So far as the

record shows, the prosecution did not make an election, nor was a motion made by defendant for the state to elect. But the court made an election, which is held to be proper in such case. 23 C. J. S. 437-438. The exact calendar date is not of the essence of the offense. Johnson vs. State, 189 Ind. 597, 128 N. E. 693; Hash vs. State, 48 Ariz. 43, 59 Pac. 2d 305; People vs. Wademan, 38 Calif. App. 116, 175 Pac. 791; State vs. Rosenberg, 84 Utah 402, 35 Pac. 2d 1004. We held in State vs. Slane, 48 Wyo. 1, 41 Pac. 2d 269, that if the transaction relied upon by the state for conviction can be and is identified in a manner other than by stating the exact date that is sufficient. So it was said in Commonwealth vs. O'Connor, 107 Mass. 219, involving the crime of adultery, "But the occasion, time and place could as well be identified by their connection with the time of some other event, as by the date in the calendar. The error in the assumed date would be wholly immaterial, provided the act charged were sufficiently identified by other circumstances." The court in the foregoing instruction applied this rule and identified the act upon which a conviction could be had as having taken place in the Hockett apartments on or about the date mentioned. We think that in the light of the testimony in this case the charge of the court related to the first act of sexual intercourse to which the prosecutrix testified as having taken place in that apartment, so that we think that the crime upon which the state relied for conviction was definitely fixed. See Earl vs. Commonwealth, 202 Ky. 726, 261 S. W. 239; State vs. Foster (Mo. Sup.), 225 S. W. 671; Smith vs. State, 20 Okl. Crim. 124, 201 Pac. 663; State vs. Hilberg, 22 Utah 27, 61 Pac. 215; 52 C. J. 1107. Defendant introduced testimony to the effect that he never was in the Hockett apartments in June, 1944, and he was corroborated in that respect by other testimony. Counsel for the defendant argue that by the foregoing instruction defend-

ant was deprived of the benefit of his alibi. The truth is that he cannot be said to have had an alibi. He admitted that he was in the Hockett apartments in the month of August, 1944, commencing about August 11th of that year, and that the prosecutrix and her brother were living with him at that time. Since the transaction upon which the state relied for conviction was fixed as having taken place during that time, the mere fact that the prosecutrix was mistaken as to the month, the difference being only approximately six weeks, cannot be said to be fatal or to have misled the defendant. It is stated in 23 C. J. S. 437 as follows: "The election should be such as to fix definitely the transaction relied on, but its sufficiency to some extent at least is discretionary with the trial court. It is enough that it be as definite as is possible from the evidence where, from the information, the evidence, and the election, accused is informed as to the transaction, or the jury could not be misled as to the particular charge submitted to them." Ordinarily a charge that the crime was committed at or about the time alleged in the information or within a given period before the filing of the indictment or information is sufficient. 23 C. J. S. 746. And we think that there was no error in the case at bar in using the phrase "on or about" to which counsel for the defendant have objected.

5. The court in instruction No. 6 instructed the jury as follows:

"The Court instructs the Jury that if you find from all of the evidence in this case, beyond a reasonable doubt, that the defendant, Carol F. Koch, had carnal knowledge of the prosecutrix, Stella June Koch, on the alleged occasion on which the prosecution has elected to stand, as explained in Instruction No. 5, herewith given, and that at that time and on said date the said Stella June Koch was under the age of eighteen (18) years; and that the offense occurred in Sublette County, Wyoming, on or before the 27th day of May, A. D.

1946, the date when the Criminal Information was filed herein, you should find the defendant guilty, and it is immaterial whether said carnal knowledge of said prosecutrix was with or without the consent of the said Stella June Koch."

Counsel for the state in his closing argument to the jury, while reading the whole of instruction No. 6, pounced upon the date of May 27, 1946, mentioned in that instruction, the language used indicating to the jury that if they found the crime to have been committed prior to that date that was sufficient. Counsel for the defendant objected to the statement because the court had not so instructed the jury. Thereupon counsel for the state again read the whole of instruction No. 6 and no further objection was made, nor did counsel insist upon any ruling of the court. The court in mentioning the date of May 27, 1946, doubtless thought that in view of the fact that instruction No. 6 also mentioned instruction No. 5 the two dates were not irreconcilable. And that is true. But the mention of these two dates gave opportunity to counsel for the state for a colorable argument to the jury, as is shown in this case. In State vs. Gibson, 131 Kans. 570, 292 Pac. 931, the state, in a case of statutory rape, elected a transaction occurring during the latter part of April or the first part of May. The court so stated in its instruction, but it also mentioned a date similar to May 27, 1946, as in this case. The supreme court said in this connection: "However, defendant does make a just criticism of the court's instruction No. 9, where the stereotyped rule was given to the effect that if the offense was shown to have been committed by defendant as charged in the information at any time within two years prior to the date the prosecution was commenced and a warrant issued thereon, it would be the jury's duty to return a verdict of guilty. Such a blanket rule of law is seldom fair to a defendant when his main defense

is an alibi. The state had elected to say that the crime was committed during the latter part of April or the first few days of May, 1929. The instruction objected to, if considered by itself, would mean to the average juryman that the election of the state didn't amount to anything; that the testimony of defendant's cloud of witnesses that he was confined to his home with a serious illness during the interval covered by the state's election might be entirely disregarded even if true, since under instruction No. 9 a conviction might be had if the offense had been committed at any time within two years." In the case at bar it was not necessary to mention the date of May 27, 1946, when the court charged that the jury must find that the crime was committed on or about June 28, 1944. That in and of itself required the jury to find that the crime was committed before the filing of the information in the case. The "on or about" June 28, 1944, could not well be stretched out to include a date beyond May 27, 1946, nearly two years thereafter. Rinker vs. United States, 151 Fed. 755; Render vs. Commonwealth, 206 Ky. 1, 266 S. W. 914. But we think that along with State vs. Gibson, supra, we cannot say that the jury were misled. There was no testimony of any illicit relations between the defendant and the prosecutrix subsequent to the time that the parties were in the Hockett apartments. The jury are presumed to have been intelligent men, and while it may be that counsel for the state tried to persuade them to disregard "on or about June 28, 1944", we do not see how they could have done so under the circumstances. State vs. Hanna, 81 Utah 583, 21 Pac. 2d 537.

6. The defendant asked the court to instruct the jury as follows:

"You are instructed that the charge of rape is in its nature a most heinous one, likely to create a strong

prejudice against the accused. It is a charge easy to make and hard to disprove. On this account you should bear in mind the difficulty of defending against such charge and consider most carefully all the evidence and the instructions in making up your verdict." The instruction was refused and exception taken by the defendant and an error is assigned on account of such refusal. Counsel for the defendant as well as the attorney general have cited Strand vs. State, 36 Wyo. 78, 252 Pac. 1030, the defendant claiming that the case is distinguishable from that case in view of the fact that evidence in this case is doubtful, the attorney general claiming that the case is authority herein for the refusal of giving the foregoing instruction. It would seem that neither counsel for the defendant nor the attorney general have fully comprehended what was decided in that case. The trial in that case was carefully conducted as is fully explained in the opinion. It was stated in that case: "There can be no doubt that a jury should view with caution the uncorroborated testimony of a young child who is prosecutrix in a case of this kind. This has been recognized ever since the oft-repeated admonitions of Sir Matthew Hale." A cautionary instruction was asked in that case somewhat different from that in the case at bar, and the court said in closing the opinion: "We are confident that the jury, while not told in so many words that they should view with caution the testimony of the prosecutrix, must have had a full realization of that duty, and the instruction was unnecessary." In other words, the effect of the opinion is that when the testimony of the prosecutrix is not corroborated a cautionary instruction should ordinarily be given, unless in some manner it appears that the jury had a full realization of the duty to view the testimony of the prosecutrix with caution. We do not, however, think that the decision in that case is controlling herein, for the reason that we can-

not agree with counsel that the record is devoid of corroborating testimony. We cannot, of course, say how strong it was. Bobby, the brother of the prosecutrix, testified that he and the defendant and his sister, Stella June, occupied the Hockett apartments some time in 1944; that Stella June slept in the bedroom of that apartment; that he and the defendant slept in the hall in separate beds; that one evening while they were living in that apartment the defendant was undressed, leaving his clothes on the bed; that he, Bobby, thought that the defendant had gone to the restroom; that he, Bobby, also went to the restroom and failed to find the defendant; that when he came back he found the clothes of the defendant on the bed, but did not find the defendant himself; that he, Bobby, thereupon went to sleep. It is, of course, not likely that the defendant would leave the apartment when he did not have his clothes on, and the conclusion would not be unreasonable that the defendant was in the room with Stella June. Bobby at the time of the trial was 12 years of age. We do not know whether he would remember the facts testified to by him when he was then less than 10 years of age, but the trial court and the jury saw him on the witness stand, and they would necessarily be better judges of that fact than we would be. There was also testimony that the prosecutrix complained to her sister concerning her illicit relations with the defendant. Such testimony was not corroborative evidence, but met "in advance a self-contradiction in her conduct which if unexplained would discredit her as a witness." State vs. Mau, 41 Wyo. 365, 285 Pac. 992. In view of the foregoing facts we cannot say that the court committed prejudicial error in not giving the instruction above mentioned, although, reading over again what Lord Hale said on this subject in 1 C. P. 634 636, the writer hereof is of the opinion that the instruction asked, or a similar one, should be given in all cases

such as that before us, unless the corroborating testimony is reasonably clear. We should perhaps not neglect to mention the fact that in the case of State vs. Slane, supra, we said that if the court instructs the jury that it may convict the defendant upon the uncorroborated testimony of the prosecutrix it should give a cautionary instruction similar to that in the case at bar, but no assignment of error or argument is before us based upon that fact.

7.   It is argued by counsel for the defendant that the evidence in this case is not sufficient to convict the defendant. The prosecution herein seems to have originated when the defendant left his wife, the mother of the prosecutrix, the wife at that time threatening him, the threat probably referring to the prosecution herein. At least that is the testimony of the defendant, and that testimony could have easily been denied if untrue, since the wife, or rather former wife, was present at the trial. Stress is laid upon this fact by counsel for the defendant in their argument in this court, but whether that fact undermined the testimony for the state in this case or destroyed the effect thereof was a matter for the jury. That was the view taken in the case of People vs. Inman, supra, where a similar situation was shown to exist. The prosecutrix, as has already been stated, so far as we can tell from the record, was reluctant to tell of her illicit relations with the defendant. She was apparently hostile to the state, and seemingly did not want the defendant prosecuted or convicted, on its face indicating that she did not want to tell anything but the truth. Of course, that attitude may have been feigned or she may have feared not to admit the substance of what she had previously told the officials, and what she may have previously told may have falsely originated out of the fact that defendant left her mother, but that, too, was a matter for the jury. Without discussing any further details the

testimony is not such that we are able to form an independent judgment as to the innocence or guilt of the defendant, nor can we say that the story told by the prosecutrix was inherently improbable. The trial judge and the jury were in much better position to judge of the weight of the evidence, and it is not ordinarily the province of this court to substitute our judgment for that of the jury when, as in this case, there is sufficient evidence, if believed, to convict the defendant. See People vs. Inman, supra. The responsibility for the conviction herein rested upon the jury where it properly belongs. People vs. Randall, 133 Mich. 516, 95 N. W. 551. The trial judge approved the verdict and he saw the witnesses on the witness stand. It would seem that he felt that the defendant is guilty, and we are not in a position to be able to say that he was wrong.

Before closing we should perhaps add that it is to be regretted that counsel for the prosecution were too interested in the mere fact of obtaining a conviction rather than in the exercise of that care and caution that was exercised in the case of Strand vs. State, supra. The prosecuting attorney, for instance, in his opening statement to the jury stated that the state would prove that the defendant was guilty of having sexual intercourse with another girl than the prosecutrix, and that he made an attempt of a similar nature on a third girl. Such testimony, of course, was wholly incompetent in this case. 44 Am. Jur. 948. And counsel for the state succeeded in getting to the jury, partly in the face of and despite an adverse ruling of the trial court, testimony wholly improper and incompetent. However, counsel for the defendant were on the ground. They knew far better than this court could know the effect that such testimony and improper offering of testimony would have on the jury, and they did not think the effect sufficiently prejudicial so as to assign these matters as error herein. Hence this court is hesitant to say

that it should, upon its own initiative, hold that the defendant did not have a fair trial because of these matters.

Finding that the assignments of error herein do not justify us in reversing the judgment herein, it must be *affirmed*.

RINER, C. J., and KIMBALL, J., concur.