James Franklin BROWN, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 90–194.

Supreme Court of Wyoming.

Aug. 30, 1991.

Wyoming Public Defender Program, Leonard D. Munker, State Public Defender, Barbara Lauer, Asst. Public Defender, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and Kenneth M. McLaughlin, Legal Intern, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., and Mary B. Guthrie, Sr. Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

THOMAS, Justice.

The focus in this appeal by James Franklin Brown (Brown) is that the trial court failed to confine the proof offered by the State to the essential elements of the charged offenses and that the product of this error was to deprive him of his right to a fair trial and a unanimous verdict. Brown complains specifically of the admission of evidence of uncharged misconduct, without proper scrutiny and without appropriate limiting instructions; the refusal of the trial court to limit the consideration of uncharged misconduct and to restrict the jury in its deliberations to those acts specified in a bill of particulars; and the failure of the State to carry its burden of proof as to the submission by the victims because of Brown's exercise of a position of authority. As a final proposition, the doctrine of cumulative error is raised. We are satisfied that, of the specters asserted in Brown's appeal, none of them actually materialized except for a failure of proof with respect to Count VII of the information. The conviction on Count VII is reversed. Otherwise, the judgment and sentence is affirmed.

Appellant states the issues to be:

"I. Whether the trial court erred in admitting evidence of uncharged misconduct without a showing that such evidence was substantially needed to prove a material fact relevant to an element of a charged offense.

"II. Whether the trial court erred in failing to instruct the jury that evidence of uncharged misconduct was admitted for limited purposes and could not be used to prove the appellant's character and that he acted in conformity therewith in committing the charged offenses.

"III. Whether the trial court erred in failing to restrict the prosecution to proof of the acts specified in the bill of particulars.

"IV. Whether the trial court erred in failing to instruct the jury that it could only convict the appellant of the specific acts set forth in the bill of particulars.

"V. Whether the trial court's failure to limit the jury's consideration of evidence of uncharged misconduct, and the trial court's refusal to restrict the jury's deliberations of those acts specified in the bill of particulars, resulted in denial of appellant's right to a unanimous verdict.

"VI. Whether the trial court erred in failing to grant judgments of acquittal on Counts IV, V, VI and VII due to insufficient evidence that appellant had used his position of authority to cause his victims to submit.

"VII. Whether the trial court erred in failing to grant a judgment of acquittal on Count VII after finding that the evidence demonstrated that appellant had not committed the act specified in the bill of particulars as constituting Count VII.

"VIII. Whether the cumulative effect of the errors discussed above was such as to deny the appellant his right to a fair trial and substantial justice."

The State, in its Brief of Appellee, reframes those issues and states them in this way:

"I. Whether the trial court abused its discretion by admitting evidence of appellant's sexual assaults on M.P. and C.P.

"II. Whether there was a variance between the bill of particulars, the indictment, and the evidence which prejudiced the appellant.

"III. Whether the trial court should have rejected appellant's instruction requiring a unanimous verdict.

"IV. Whether appellant was properly convicted of second degree sexual assault because he used his position of authority to cause his victims to submit to the sexual assaults.

"V. Whether there was cumulative error."

The record in this very unsavory case can only be described as lurid. We present only so much of the facts of the tragedy inflicted upon innocent children as is necessary to explain the court's opinion. In Feb-

ruary of 1989, Brown's oldest stepchild, M.P., left Brown's home and went to live with her natural father in Oregon. While she was in Oregon, M.P. admitted to an assistant district attorney that Brown had sexually assaulted her. A charge of sexual assault was filed, and an Oregon warrant was issued for Brown's arrest. On November 28, 1989, Brown was arrested in Wheatland on the warrant issued in Oregon.

The mother of the several victims, A.P., initially supported Brown's claims that he had not molested M.P. A few days after Brown's arrest, however, she found a bag of burned photographs under the seat of Brown's pickup truck. Although most of those pictures were sufficiently burned so that the subject could not be recognized, A.P. could tell that one of them, which had been cut into pieces rather than burned, had been taken in her bedroom. The photograph depicted a partially clothed female exposing her genitals and anus to the camera. A.P.'s suspicions were aroused, and she then asked her younger daughter, C.P., whether M.P. had ever said anything to C.P. about being molested. C.P. advised her mother that, prior to the time she left for Oregon, M.P. had admitted being sexually abused by Brown. A.P. then took the cut-up photograph to the local sheriff. It was pieced together, and the sheriff had A.P. make a statement. Subsequently, Brown's younger stepdaughter, C.P., and Brown's stepson, S.P., both informed the authorities that they had been sexually abused by Brown.

As a product of this investigation, the Platte County attorney filed a criminal complaint on January 5, 1990 in which Brown was charged with multiple counts of sexual assault and taking indecent liberties with a minor. Subsequently, the State filed an information setting out six counts of second degree sexual assault and five counts of indecent liberties with a minor. Of these eleven counts, one count of second degree sexual assault and three counts of indecent liberties with a minor were subsequently dismissed. The remaining counts were: Count I charged second degree sexual assault (statutory rape of S.P. in violation of § 6–2–303(a)(v), W.S.1977); Counts II and III charged the taking of indecent liberties with C.P. in violation of § 14–3–105, W.S.1977; Counts IV, V, and VI charged second degree sexual assault (based upon a position of authority) upon C.P., in violation of § 6–2–303(a)(vi), W.S.1977; and Count VII charged second degree sexual assault, again based upon a position of authority, upon M.P., in violation of § 6–2–303(a)(vi).[1] Brown filed a Motion for a Bill of Particulars detailing the several charges, and a response was filed by the State.

At trial, each of the children testified about abuse received at the hands of Brown. M.P. testified that when the family still resided in LaPine, Oregon, prior to the time they moved to Wheatland, Brown produced some pornographic magazines and had her look at them. Two days later, according to her testimony, Brown fondled her breasts and genitals while she was sitting on Brown's lap. Brown then took photographs of her in the nude. She stated that Brown threatened to make copies of those pictures and "spread them all over town" if she told anyone what he had done. After that, first in Oregon, but continuing after the family had moved to Wheatland,

---

1. The relevant statutes read as follows:

Section 6–2–303(a)(v), (vi), W.S.1977 (June 1988 Repl.):
"(a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:

\* \* \* \* \* \*

"(v) At the time of the commission of the act the victim is less than twelve (12) years of age and the actor is at least four (4) years older than the victim;

"(vi) The actor is in a position of authority over the victim and uses this position of authority to cause the victim to submit, \* \* \*."
Section 14–3–105, W.S.1977 (July 1986 Repl.):
"Any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony, and upon conviction shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both."

Brown used his hands, tongue, and penis to penetrate or attempt to penetrate M.P.'s vagina on numerous occasions. M.P. also testified about an incident that occurred in the family living room in Wheatland. In her words, "[h]e wanted me to go down and suck his penis, and I wouldn't. I backed off. * * * He said he would make me do it some other time."

The younger stepdaughter, C.P., testified about Brown's mistreatment of her. According to her testimony, the first sexual contact occurred when Brown showed her some pornographic magazines and then fondled her breast. She stated that Brown told her that her mother and grandmother would hate her if she told anyone what had happened. After that, Brown began playing with her breasts and vagina with his fingers and his tongue. She testified that these assaults occurred from three to five nights each week. She also testified that Brown had sexual intercourse with her once a week. She testified that these assaults continued until shortly before Brown was arrested. In her testimony, C.P. described two of these incidents of sexual intercourse in detail.

C.P. also testified that Brown took nude photographs of her vagina and breasts and made her perform fellatio on him. He threatened C.P. with using the pictures to get even with her if she told anyone about what he had done. C.P. also identified the photograph that A.P. had found in the pickup truck, the one that had been cut to pieces, as one of those that Brown had taken of her.

When S.P. testified, he stated that Brown had assaulted him in the garage behind the family's home in Wheatland. He stated that Brown had him bend over, covered his head with a towel, and then placed something "five fingers around" in S.P.'s anus.

It is not surprising that Brown was found guilty on all seven of the charged counts. The testimony of the children is strong and essentially unrefuted.

Brown's first two issues relate to the propriety of the admission of evidence of uncharged misconduct. He complains that he was unfairly prejudiced in view of the fact that evidence was presented to the jury concerning numerous uncharged incidents of sexual misconduct between himself and both M.P. and C.P. Rule 404(b), W.R.E., relates to the admissibility of evidence of such uncharged crimes, wrongs, or acts. That rule provides as follows:

> **"Other crimes, wrongs or acts.**—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The risk contemplated by Rule 404(b), W.R.E., in a criminal trial, is that a defendant could be convicted because of unfair prejudice brought about by irrelevant evidence of his prior offenses or bad acts. For this reason, the rule establishes that evidence of such prior offenses or misconduct is not to be admitted if its only purpose is to prove that the defendant had a bad character and suggest that he must have committed the crime with which he is charged because such conduct is consistent with the bad character. *See Longfellow v. State,* 803 P.2d 848 (Wyo.1990). Rule 404(b), W.R.E., however, does permit the use of evidence of other crimes, wrongs, or acts for other appropriate purposes. The list of those purposes articulated in the rule itself is deemed to be illustrative but not exhaustive. *Longfellow; Brown v. State,* 736 P.2d 1110 (Wyo.1987).

In cases involving sexual abuse of minors, this court generally has sustained convictions in the face of the contention that admitting uncharged acts of misconduct in evidence was error. That evidence normally has been admitted under one of two theories, both identified as exceptions to Rule 404(b), W.R.E. The evidence has been found relevant to demonstrate the course of conduct between the perpetrator and the victim, or the evidence has been admitted because of the necessity of demonstrating the motive of the perpetrator for commission of the acts in question.

We have said that evidence of a course of conduct is helpful to explain what happened between an accused and the victim and is integral to understanding the context of the crime charged. *Scadden v. State*, 732 P.2d 1036 (Wyo.1987). The facts in *Scadden* involved a volleyball coach accused of using his position of authority to engage in sexual relations with girls on the volleyball team. Scadden challenged the use of evidence concerning his treatment of non-victim girls on the team, arguing that it was impermissible, irrelevant character evidence under Rule 404(b). We held that the use of this testimony was permissible because it tended to demonstrate the extent of Scadden's authority over his players and thus was relevant to demonstrate the charged crime in context.

*Brown* is illustrative of a case in which evidence of extrinsic bad acts can be used to demonstrate motive. In that case, Brown was charged with incest with a fifteen-year-old daughter. At trial, the victim's half-sister, over Brown's objection, testified to incestuous conduct that he had engaged in with her over a period of years. We held that such testimony was permissible to establish Brown's motive as against his contention that the use of the half-sister's testimony was impermissible under Rule 404(b). We explained:

"Incest involves aberrant sexual behavior—it is a type of sexual deviancy that is difficult to understand. Therefore, a trier of fact might well wonder what would motivate the accused to behave in such bizarre manner. The evidence of prior sexual acts then was probative under the motive exception because of the unusual sexual behavior involved. It seems, however, that motive is usually thought of as the reason the crime was committed. If motive equates to reason, then perhaps appellant's motive for having sexual relations with his younger daughter was that the older daughter was no longer available and the younger daughter was now taking her place. The older daughter's testimony would be admissible for this purpose.

"If the accused had a predilection to deviant sexual practices with young female relatives, it would not be unreasonable for the trier of fact to determine that he had a motive to commit the acts complained of by the victim in this case." *Brown*, 736 P.2d at 1113.

In other cases, we have allowed similar evidence of prior sexual misconduct that was not charged in the information. Those cases include: *Gezzi v. State*, 780 P.2d 972 (Wyo.1989) (older sister allowed to testify to abuse at hands of defendant in his trial for abuse of younger sister); *Schwenke v. State*, 768 P.2d 1031 (Wyo.1989) (evidence that father touched son's penis on earlier occasion relevant where father denied committing indecent liberties); *Makinen v. State*, 737 P.2d 345 (Wyo.1987) (prosecutor's references in incest case to other acts of incest by defendant with victim not improper); and *Elliott v. State*, 600 P.2d 1044 (Wyo.1979) (older sister's testimony relevant in sexual assault case to show defendant's motive and that younger sister had not lied). In *Elliott*, we noted that a number of early cases in Wyoming jurisprudence permit a young victim of sex abuse to testify concerning similar, uncharged acts committed against the victim by the perpetrator. *See State v. Koch*, 64 Wyo. 175, 189 P.2d 162 (1948); *State v. Quirk*, 38 Wyo. 462, 268 P. 189 (1928); *Strand v. State*, 36 Wyo. 78, 252 P. 1030 (1927).

Brown acknowledges the application that we have given to the exception set forth in Rule 404(b), but he argues that the test set forth in *Bishop v. State*, 687 P.2d 242 (Wyo.1984), *cert. denied* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985), was not satisfied in this instance. In *Bishop*, 687 P.2d at 246, quoting from *United States v. Myers*, 550 F.2d 1036, 1044 (5th Cir.1977), we adopted a five-part test for evaluating the admissibility of evidence under Rule 404(b), W.R.E., saying:

"(1) The proof of the other similar crimes must be plain, clear, and convincing.

"(2) The other crimes must not be too remote in time from the charged offense.

"(3) The evidence of the other crimes must be introduced for a purpose sanc-

tioned by Rule 404(b) of the Federal Rules of Evidence [identical to Wyoming Rule 404(b) ].

"(4) The element of the charged offense that the evidence of other crimes is introduced to prove must be a material issue in the case.

"(5) There must be a substantial need for the probative value of the evidence of the other crimes."

This five-factor test establishes appropriate parameters for the exercise of discretion by a trial court in ruling upon the admissibility of evidence offered under Rule 404(b). We afford considerable deference to the balancing of these factors by the trial court. *Longfellow*, 803 P.2d 848. Brown contends that the fourth and fifth criteria were not met in this case. Specifically, he asserts that the evidence did not assist in establishing a material element in the case and that there was no substantial need for such evidence. He then urges the proposition that an abuse of discretion was committed by the trial court in admitting the challenged evidence. We do not accept Brown's argument.

■ The evidence of the pattern of sexual behavior in which Brown was involved with M.P. and C.P. was relevant and, therefore, admissible to show a course of conduct and a clear pattern of sexual abuse committed by Brown. This testimony concerning Brown's course of conduct also was necessary to establish a motive for commission of the acts that were charged. Motive was important to this case because of a defense offered by Brown in which he suggested that the charges had been fabricated.

During trial, Brown, through his counsel, offered numerous allegations relating to fabrication in the closing argument. First, it was hinted that A.P. had made up the charges in order to profit monetarily in her subsequent divorce from Brown. Second, the defense asserted that the natural father of the children had threatened to "make A.P.'s life miserable" and to take her to court, and the suggestion was made that M.P. and her natural father had fabricated the allegations in order to prevail in the custody battle. Finally, the defense implied that someone else, who was not identified, took the nude photographs of C.P. for the purpose of implicating Brown. The demonstration of the long-term pattern of sexual abuse constituted an attempt by the State to rebut this claim that the case against Brown was fabricated. The identity of the perpetrator as the one who committed the crime is an essential element of any offense that is charged. Therefore, the evidence reflecting Brown's course of conduct with these children, and demonstrating his motive for sexually abusing them, did tend to establish an essential element of the crimes charged, and there was a substantial necessity for the use of the testimony in order to overcome the defense of fabrication.

■ Brown's second claim of error relates to the refusal by the trial court to give an instruction to the jury concerning the use of uncharged conduct. A handwritten requested instruction was offered by Brown which reads as follows:

"You are instructed that the state must prove every element of each count beyond a reasonable doubt. Evidence of other conduct of the defendant with the alleged victims has been admitted by the court. Such evidence cannot be used to prove the defendant's character in order to show that he acted in conformity with his character on the occasions of the charged crimes."

Our rule is that the trial court must give a limiting instruction concerning evidence offered under Rule 404(b), W.R.E., if that is requested by the defendant. *Connolly v. State*, 610 P.2d 1008 (Wyo.1980); Rule 105, W.R.E. In *Grabill v. State*, 621 P.2d 802 (Wyo.1980), an exception to this rule was formulated.

■ Testimony was offered in *Grabill*, a case involving child abuse, of the defendant's prior abuse of other children. It was admissible for the purposes set forth in Rule 404(b), W.R.E. In that case, the trial court refused a proposed instruction by the defendant that the "prior bad acts" evidence must be considered only for the purpose of demonstrating intent. We af-

firmed the denial of the limiting instruction by the trial court explaining that:

> "Appellant's prior acts were not admitted only for a limited purpose. They were admitted to prove vital elements of the offense—absence of accident and identity of the perpetrator, and they were admitted in a particular type of case in which the testimony is regularly that of a victim against that of the accused—sex offenses and child abuse. See *Elliott v. State, supra,* 600 P.2d 1044. The evidence has a direct bearing on the relationship to the commission of the offense. *State v. Martin,* 208 Kan. 950, 495 P.2d 89 (1972); *State v. Ralls,* 213 Kan. 249, 515 P.2d 1205 (1973)." *Grabill,* 621 P.2d at 813.

As in *Grabill,* the evidence of uncharged misconduct in this case did prove "vital elements of the offense[s] charged" by demonstrating that the acts complained of actually occurred and that they were part of a course of conduct pursued by the appellant. While the instruction offered by Brown accurately reflects Rule 404(b), W.R.E., it was not complete in the context of this case and could be perceived as misleading. The instruction failed to encompass the permissible use of the evidence of prior misconduct and, under the circumstances, it was not error for the trial court to refuse the instruction. In our judgment, it fits within the *Grabill* rationale.

The next three issues urged by Brown relate to the Bill of Particulars furnished by the State. Brown's position is that, having furnished a Bill of Particulars, the State was limited to evidence that established those acts specified, and he contends that the jury should have been instructed that it could convict only upon evidence of the acts defined in the Bill of Particulars. He contends that the failure of the trial court to limit the jury's consideration to those acts resulted in a denial to him of his right to a unanimous verdict.

Approaching those issues sequentially, Brown's first contention is that the State should have been limited in its proof to evidence that established those acts specified in the Bill of Particulars. He argues that the evidence that was presented which was subject to the application of Rule 404(b), W.R.E., unfairly surprised him, and its use permitted the State to circumvent the purposes of the Bill of Particulars, which was to provide him with the details of the offenses with which he had been charged.

Brown relies upon *Booth v. State,* 517 P.2d 1034 (Wyo.1974), and *State v. Rideout,* 450 P.2d 452 (Wyo.1969), for the proposition that, once the State has set forth the detailed facts constituting the offense charged in its response to a motion for a bill of particulars, the State then is limited to proving only those facts at trial. Brown concedes that this rule does not mean the State cannot prove anything other than what has been specified in the bill of particulars. Obviously, if that were the thrust of the rule, the provisions of Rule 404(b), W.R.E., allowing the State to prove prior bad acts for permissible reasons, would become meaningless. Those facts that demonstrate such acts would never be included in the response to a motion for a bill of particulars. *See* Rule 9(d), W.R.Cr.P. Brown's argument, instead, is that, when there is a substantial likelihood that a defendant will be convicted of acts that are not included in the response to the motion for a bill of particulars, evidence of those acts should not be received or, if that evidence is received, a proper limiting instruction must be given. In principle, this may be a sound approach, but it cannot be applied reasonably to the circumstances found in this case.

■ The jury instructions, the testimony of the child victim of the offenses charged in Counts II through VI of the Information, and the Bill of Particulars with respect to those counts demonstrate that there could have been no substantial likelihood of Brown being convicted for some conduct other than the offense that was charged. These aspects of the record also show that Brown was not unfairly surprised at trial.[2]

---

**2.** We find it is unnecessary to analyze Count I as this was an assault on S.P. Only one such

assault was charged, and there was no evidence elicited to which Rule 404(b), W.R.E., would

With respect to Count II, the jurors were informed by the instructions that the charge concerned an act of indecent liberties with C.P., which occurred between July 25, 1989 and August 10, 1989. These dates were supplied in the Amended Information, and the Bill of Particulars specified that this was the instance in which Brown began using his hands to touch C.P.'s breast, shortly after A.P. began working. C.P. testified at the trial, with respect to that occasion, that Brown showed her pornographic magazines and then stroked her breast.

With respect to Count III, the jury was instructed that Brown was charged with an act of indecent liberties with C.P. that occurred on or between August 1, 1989 and August 31, 1989. As is true with respect to Count II, the Amended Information supplied these dates, and the Bill of Particulars specified that this offense occurred when Brown required C.P. to pose in the nude for the several photographs that had been viewed by Brown's counsel. C.P. testified at the trial that Brown had taken these pictures around the first part of August.

We turn to Count IV as to which the jury was instructed that it involved sexual intrusion upon C.P., and that the crime occurred on September 9, 1989. That date was disclosed to Brown in the Information. In the Bill of Particulars, it was stated that this offense was either sexual intercourse or the intrusion of Brown's fingers into C.P.'s vagina. At trial, C.P. described two events, either of which would meet the description given Brown in the Bill of Particulars. C.P. could not remember the specific date of either incident. A sheriff's deputy, however, read to the jury from a transcript of an earlier taped interview with C.P. in which C.P. described sexual intercourse with Brown and gave the date of September 9, 1989. By this evidence, a specific event was elected, and that was the one presented to the jury. *See e.g., Stewart v. State*, 724 P.2d 439 (Wyo.1986); *Koch*, 189 P.2d 162 (either trial court or

prosecution must elect specific act for presentation to the jury).

As to Count V, the jury was instructed that it involved sexual intrusion of C.P. which occurred on or between November 14, 1989 and November 21, 1989. The Information set forth these dates, and the Bill of Particulars described the act of either sexual intercourse or the intrusion of defendants' fingers into C.P.'s vagina. At the trial, C.P. testified with respect to this incident that it was the last time she was molested prior to Brown's arrest.

The instructions to the jury on Count VI advised that the count involved infliction of sexual intrusion on C.P. which was charged as having occurred on or between July 25, 1989 and November 21, 1989. Brown was notified in the Information and in the Bill of Particulars of the date of this incident and that it involved fellatio. At trial, C.P. related the details of this crime.

Count VII of the charges in the Information also involved fellatio, but the victim with respect to that charge was M.P. The evidence at the trial did not establish this offense. M.P. testified only about an occasion on which Brown wanted her to perform fellatio on him, but she stated that she successfully resisted his attempt. Even so, Brown was convicted of this charge. Because the evidence is insufficient to establish the offense, Brown's conviction must be, and it is, reversed with respect to Count VII. The prosecution simply failed to establish the crime of fellatio as charged and detailed in the Bill of Particulars.

■■■ With the exception of Count VII, the State proved by competent evidence each of the acts alleged in the Information, as further described with specificity in the Bill of Particulars. It is true that the female victim, C.P., could not recall the exact dates on which each incidental abuse occurred, but she did recall particular events that corresponded to the acts that were charged. We have held that in the case of sexual abuse of a child, it is sufficient to establish the transaction rather

---

apply with respect to this victim. Essentially the same analysis is applicable to Count VII of

the information which constituted a charge of assault on M.P.

than the exact date or dates in question. *Stewart,* 724 P.2d 439; *Rhodes v. State,* 462 P.2d 722 (Wyo.1969); *Koch,* 189 P.2d 162. *But see also Esquibel v. State,* 399 P.2d 395 (Wyo.1965) (alibi defense requires specific date). That is what the prosecution did in this instance, with the exception of Count VII.

Furthermore, most of the evidence of other misconduct received pursuant to Rule 404(b), W.R.E., through the testimony of C.P., was not of the nature that would lead the jury to think it described the particular events that were charged in the information. C.P. described such incidents in general terms such as "a few times," "three to five nights a week," "about every time"— terms that were not likely to mislead the jury as to any of the specific incidents that Brown was charged with in the Information. The only specific uncharged incident that was elicited from C.P. described two acts of intercourse with Brown, the dates of which she could not recall, and either of which could have been the crime charged in Count IV. As we previously have noted, the testimony of the deputy sheriff identified only a single incident that occurred on September 9, 1989, and thus the jury could identify the particular act described in the Bill of Particulars and convict upon it.

■ Brown's further argument is that he was surprised by this additional evidence. The record demonstrates that the trial court permitted Brown liberal discovery of the statements of victims and other witnesses. In addition, the prosecuting attorney filed a motion *in limine* with the trial court asking the court "for an order permitting the admission of uncharged, or other sexual acts, with the victims in this case." A copy of this motion was served on Brown's counsel, and we must assume that counsel were prepared to deal with the evidence since the motion was granted by the trial court.

Summing up, we hold that there was no substantial likelihood that Brown was convicted of any acts that were not specifically stated in the response to the motion for a Bill of Particulars, with the exception of Count VII. That count is reversed.

Brown was not surprised to his prejudice by the evidence that was presented. The trial court committed no error in permitting the jury to hear the evidence of other misconduct after applying Rule 404(b), W.R.E.

■ Brown then claims that the trial court erred because it failed to give his requested instructions setting forth the elements of the offenses. These instructions were parallel to the "element of the offense" instructions that the court gave. The difference was that Brown's proposed instructions included descriptions of the specific acts as they had been identified by the response to the motion for a bill of particulars. Thus, Brown's proposed instruction on Count II read as follows:

"The necessary elements of the crime of taking immodest, immoral or indecent liberties with a child are:

"1. The crime occurred within the County of Platte on or about the date of July 25, 1989 through August 10, 1989; and

"2. The defendant knowingly took immodest, immoral or indecent liberties with [C.P.], a child under the age of 19 years;

"3. *By touching her breasts with his hands.* * * *." (Emphasis added.)

■ Our standard for review with respect to jury instructions refused by the court is articulated in *Scadden,* 732 P.2d at 1053, as follows:

"The general rule in reviewing questions involving instructions is that the trial judge is afforded latitude to tailor the instructions to the facts of the case, and reversible error will not be found as long as the instructions when viewed as a whole and in the context of the entire trial fairly and adequately cover the issues."

*See also King v. State,* 780 P.2d 943 (Wyo. 1989). The one crucial difference between Brown's proposed instructions and those given is that Brown's defined the acts that constituted the offenses charged. If those instructions had been given, they clearly would have circumscribed the fact finding process for the jury. This is not the function of instructions to a jury under our

judicial system. The instructions to the jury are designed to inform the jury about the applicable law so that the jury may apply that law to its own findings with respect to the material facts. *See Martinez v. City of Cheyenne*, 791 P.2d 949 (Wyo.1990).

The instructions that the court gave fairly and adequately covered the issues in this case. Brown did not need the assistance of his requested instructions simply to prevent the jury from convicting him of uncharged misconduct. Under the circumstances of this case, we hold that there was no abuse of its discretion on the part of the trial court when it refused Brown's proposed instructions.

 We then turn to Brown's contention that the trial court deprived him of his right to a unanimous verdict when it failed to confine the jury to the acts specified in the Bill of Particulars. Brown presented the trial court with an instruction on unanimity. That instruction reads:

"The defendant is accused of crimes which may be committed in more than one way. The verdict form does not require that you specify the way in which you find that each individual count was committed. The law, however, does require that you agree unanimously on the acts which constitute each offense."

The trial court refused Brown's proposed instruction, but it did give this instruction addressing the matter of unanimity:

"Your verdict must represent the considered judgments of each juror. In order to return a verdict, it is necessary that each juror agree thereto. * * *."

 It is Brown's theory that the failure of the court to give his requested instruction on unanimity, and the court's failure to give the limiting instruction on prior bad acts that he requested, had the effect of permitting the jury to convict him for the several crimes that were charged even though different jurors might have found him guilty of different acts. He contends that this result would deprive him of the unanimous verdict to which he is entitled with respect to the conduct for which he was convicted. The Wyoming constitution does recognize the right of a criminal defendant to a unanimous verdict by twelve impartial jurors. *Taylor v. State*, 612 P.2d 851 (Wyo.1980). We have not previously interpreted this right in a way that requires jurors, when returning a general verdict, to be unanimous as to the manner in which the crime was committed. Neither have we required an instruction like that requested by Brown.

We recognize that sister jurisdictions do require such an instruction. *See e.g.,* *Woertman v. People*, 804 P.2d 188 (Colo. 1991); *People v. Jones*, 51 Cal.3d 294, 270 Cal.Rptr. 611, 792 P.2d 643 (1990), *order on remand* 273 Cal.Rptr. 292 (1990); *State v. Hanson*, 59 Wash.App. 651, 800 P.2d 1124 (1990). Still, the failure to give such an instruction has often been held to be harmless error under the circumstances of this case. *See e.g., Thomas v. People*, 803 P.2d 144 (Colo.1990); *State v. Camarillo*, 115 Wash.2d 60, 794 P.2d 850 (1990); *State v. Allen*, 57 Wash.App. 134, 787 P.2d 566 (1990).

We conclude that this is not an appropriate case in which to adopt a requirement for a unanimity instruction. If we were to impose such a requirement in this instance, we then would be compelled under the facts and circumstances to hold that any such error was harmless. In this case, however, we need only note that sufficient proof was presented of the individual acts constituting each offense that there was no reasonable likelihood that the jury failed to reach unanimity as to the crimes charged. On Court IV only, where there are two specific but similar acts described by the testimony, was there evidence that might create a danger of the jury "splitting" on the offense for which Brown was convicted. The testimony of the deputy sheriff cured this defect in specificity, and Brown's right to jury unanimity was not violated by the verdict of the jury or by the failure of the court to give the instruction that he requested.

 With respect to still another issue, Brown contends that the State simply failed to prove the allegations with respect

to Counts IV, V, VI, and VII that he caused the submission of the victims by virtue of his position of authority. Brown concedes that he, in fact, did occupy a position of authority over these children, but he contends that the requisite proof is lacking that he "use[d] [his] position of authority to cause the victim to submit." Section 6–2–303(a)(vi) (June 1988 Repl.). In making this argument, Brown also concedes that the jury could have concluded from the testimony that was presented that these children were fearful of his temper, that he had spanked them with a paddle, that he was a manipulator who used people, and that he had secured their silence by telling them that their mother would hate them or that he would circulate nude photos of them. Still Brown contends that this evidence was insufficient to allow the jury to conclude that the children submitted *because* of Brown's authority.

We hold that Brown's construction of the phrase "use of a position of authority" as it is encompassed by this statute is too narrow. Section 6–2–301(a)(iv) (June 1988 Repl.), defines "position of authority" as follows:

" 'Position of authority' means that position occupied by a parent, guardian, relative, household member, teacher, employer, custodian or any other person who, by reason of his position, is able to exercise significant influence over a person."

In *Scadden,* 732 P.2d at 1042–43, we explained that:

" * * * [I]t is apparent that the legislature used the word 'authority' to mean an externally granted power, not a self-generated control. One in a position of authority is a person who acquires that status by virtue of society and its system of laws granting to him the right of control over another.

&ast; &ast; &ast; &ast; &ast; &ast;

" * * * *Absent* the fact that appellant was the victim's teacher, none of the events for which appellant was charged and convicted would have occurred." (Emphasis added).

A stepfather, as a parental figure, generally is in a position to exercise authority and control over stepchildren. The testimony in this case showed that Brown was directly involved with discipline of C.P. At least one of the charged crimes occurred when the children's mother was absent, and Brown was, in fact, supervising C.P. Brown's role as a stepfather gave him both access (in the context of opportunity) to, and influence over, these children. It is evident that the children understood this, because it was unnecessary that Brown threaten them in order to obtain coerced obedience to his outrageous sexual demands. In most instances, those threats occurred only after the children had submitted. There is no question that, given these circumstances, the jury reasonably could have inferred, as it did, that any resistance by these children was undermined by Brown's authority and his role in the household. Clearly, that was enough to satisfy the statutory requirement of use of a position of authority. We hold that the jury properly found, under the standard of beyond a reasonable doubt, that appellant invoked his position of authority to commit the counts of sexual assault against C.P.

█ We can quickly dispose of Brown's final contention that his conviction must be reversed because of the occurrence of cumulative error. We have found no error in this case, other than the conviction with respect to Count VII, and that count is reversed by our holding. We simply are unable to recognize any claim of cumulative error as to the remaining counts in the absence of some underlying error to support that claim. *See Jennings v. State,* 806 P.2d 1299 (Wyo.1991); *Justice v. State,* 775 P.2d 1002 (Wyo.1989).

Brown's conviction and sentence with respect to Count VII are reversed. We affirm his convictions on all other counts and the sentence imposed by the trial court.