**Mark MITCHELL, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 93–29.

Supreme Court of Wyoming.

Dec. 16, 1993.

Leonard D. Munker, State Public Defender, Cheyenne, and Defender Aid Program, Gerald M. Gallivan, Director, John H. Robinson and Ryan R. Roden, Student Interns, Laramie, for appellant.

Joseph B. Meyer, Atty. Gen., Peter J. Mulvaney, Sylvia L. Hackl, Deputy Attys. Gen., D. Michael Pauling, Sr. Asst. Atty. Gen., Cheyenne, and Prosecution Assistance Program, Theodore E. Lauer, Director, and Beverly Chewning Burton, Student Intern, Laramie, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

Of the two evidentiary issues raised in this appeal of the twenty-four year old appellant's conviction of second-degree sexual assault of a ten-year old girl, the major issue questions the admission under Wyo.R.Evid. 404(b), over appellant's objection, of evidence of the appellant's uncharged sexual misconduct to prove motive and intent in the present second-degree sexual assault prosecution. The other issue presented questions the admission, without appellant's objection, of the testimony of two other prosecution witnesses relating the ten-year old girl's out-of-court statement to them about the charged assault.

We have concluded that no prejudicial error occurred, and we affirm the judgment and sentence entered by the trial court.

## FACTS

On the night of March 6, 1991, ten-year old A.J. was staying with appellant's parents in their home while her parents attended an out-of-town concert. Also staying at the home were A.J.'s younger brother and appellant. After all in the house had gone to bed that night, appellant, on two separate occasions, entered the bedroom in which the ten-year old girl was sleeping and sexually assaulted her by inserting his finger inside her vagina. According to the ten-year old victim, appellant told her he would get her if she told anyone about the assault. She did not report the incident for more than a year. After reporting it, she was interviewed by both the county sheriff and an employee of the State Department of Family Services to whom she related the details of the incident.

The prosecution charged the twenty-four year old appellant under WYO.STAT. § 6-2-303(a)(v) (1988) with having committed two separate acts of sexual intrusion against the

ten-year old girl by inserting his finger inside her vagina for the purpose of his sexual arousal, gratification or abuse. The statute reads in pertinent part:

(a) Any actor who inflicts *sexual intrusion* on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:

\* \* \* \* \* \*

(v) at the time of the commission of the act the victim is less than twelve (12) years of age and the actor is at least four (4) years older than the victim.

(Emphasis added).

As used in the above-quoted statute, the term "sexual intrusion" means in pertinent part:

(A) Any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse.

WYO.STAT. § 6–2–301(a)(vii)(A).

After trial to a jury, appellant was found guilty, and he then was sentenced to an enhanced term of a minimum of twenty-five years and a maximum of forty years in the Wyoming State Penitentiary. This appeal followed.

Before the trial began, appellant's trial counsel filed a *motion in limine* seeking the court's order prohibiting the prosecution's mention at trial of appellant's uncharged misconduct. Appellant's trial counsel filed a memorandum in support of his *motion in limine.* Opposing the motion, the prosecution in its memorandum stated that through the testimony of the former criminal investigator in the office of the county attorney of Washakie County, Wyoming, and for purposes of proving identity, motive, intent, and victim corroboration, it intended to introduce appellant's 1986 conviction of second-degree sexual assault against a three-year old girl by insertion of his finger inside the child's vagina and appellant's 1986 statement to that investigator admitting the assault and ex-

pressing the sexual arousal he experienced while perpetrating the assault.

On the morning of the first day of trial, both counsel met with the trial judge in chambers and orally argued the *motion in limine.* The prosecution stated it intended to introduce the uncharged misconduct evidence to prove identity, motive, and intent. Further explaining, the prosecution argued that since the charged crime of second degree-sexual assault contained the element of sexual arousal or gratification, the uncharged sexual misconduct evidence would show the sexual arousal or gratification that appellant received from having sexual encounters with young girls. In response, appellant's trial counsel argued that even if the uncharged sexual misconduct evidence were relevant, the unfair prejudice to appellant caused by its admission outweighed its probative value. Remarking that he had read the written memoranda and considered counsels' arguments, the trial judge ruled he would deny appellant's motion and allow the prosecution to introduce the uncharged sexual misconduct evidence for the purposes of showing motive, opportunity, intent or plan.

The first witness to testify for the prosecution was the mother of the ten-year old girl who claimed she was the victim of appellant's sexual assault. In the cross-examination of this witness by appellant's trial counsel, the witness stated her daughter had never mentioned the alleged assault to her for more than a year, but that usually her daughter discussed her problems with her. The prosecution's next witness was the ten-year old child who claimed to be appellant's victim. In the cross-examination, appellant's trial counsel elicited testimony from the child that: she did not remember whether or not she told her mother about the incident; she usually tells her mother when something important happens to her; she became angry with appellant when he did not let her ride a certain horse that his parents owned; she tells lies once in awhile but tries not to lie very much; and at the time of the incident in question she did not try to scream or tell appellant's parents who were in a nearby room what appellant was doing to her.

The prosecution's third witness was the former criminal investigator who had investigated the allegations leading to appellant's 1986 conviction of second-degree sexual assault. Pursuant to the earlier request of appellant's trial counsel, the trial judge gave the jury a limiting instruction before this witness testified. In a nutshell, his direct examination testimony was that on October 24, 1986, in his office at the sheriff's department in Worland, Wyoming, in the course of his investigation, he interviewed appellant and appellant told him, after being advised of his *Miranda* rights, that while bathing his three-year old niece he touched her breast area and vaginal area and inserted his finger into her vagina, explaining that this activity sexually aroused him. Through this witness the prosecution introduced appellant's 1986 conviction for that criminal behavior.

The prosecution's final witnesses were an employee of the Department of Family Services and the sheriff of Hot Springs County. Without drawing objection from appellant's trial counsel, both testified about what the ten-year old child told them about the alleged incident when they interviewed her more than a year after the alleged incident and six months before trial.

## DISCUSSION

1. *Admission of Uncharged Sexual Misconduct.*

Appellant contends that the trial court committed reversible error in admitting into evidence the former criminal investigator's testimony of appellant's 1986 second-degree sexual assault conviction and his October 24, 1986 statement explaining the sexual arousal he experienced when he committed the sexual assault for which he was convicted. Appellant argues that although the prosecution offered the uncharged sexual misconduct evidence to show appellant's motive or state of mind, *viz.*, he experienced sexual arousal, that motive or state of mind is not an element of the charged crime of second-degree sexual assault. He argues that the prosecution also offered the uncharged sexual misconduct evidence to prove identity, but that identity of the alleged perpetrator was not in issue. In other words, this was not a case in

which the perpetrator's identity was unknown and circumstantial evidence was introduced from which identity could be inferred; rather, this was a straightforward case in which the eyewitness victim identified the perpetrator and the perpetrator denied the accusation. Because the prosecution's purposes for introducing the uncharged misconduct evidence were not well-founded and were unnecessary, appellant reasons, that evidence was more unfairly prejudicial than probative because it could prove nothing but the appellant's bad character, which is precisely the reason this type of evidence is excluded under application of Wyo.R.Evid. 404(b).

■ In response to appellant's argument, the state sets forth this court's well-established standard of review applicable to such evidentiary issues and then applies in that context the five-factor analysis we announced in *Bishop v. State*, 687 P.2d 242, 246 (Wyo.1984), *cert. denied*, 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985). The factors we consider are: (1) clarity of proof of the uncharged misconduct; (2) amount of time between the uncharged misconduct and the crime charged; (3) purpose for introduction of the uncharged misconduct; (4) materiality of the uncharged misconduct, *i.e.*, whether an element of the charged crime to which the uncharged misconduct is relevant is in issue; and (5) the prosecution's substantial need for the uncharged misconduct evidence. *Bishop*, 687 P.2d at 246; *and see Frenzel v. State*, 849 P.2d 741, 752 (Wyo. 1993). Each of these factors need not be satisfied; the trial court has broad discretion in balancing the factors. *Frenzel*, 849 P.2d at 752.

From the *Bishop* analysis, the state concludes that the five-factor test was met in this case and, therefore, the uncharged sexual misconduct evidence was properly admitted. We agree with the state's analysis and conclusion.

■ As explained by this court before, "[t]he admissibility of prior bad acts of the accused in a criminal case is controlled by Rules 402, 403, and 404 of the Wyoming Rules of Evidence." *Coleman v. State*, 741

P.2d 99, 102 (Wyo.1987). In *Coleman*, Justice Thomas, writing for the court, succinctly summarized the judicial process for applying these rules. *Coleman*, at 102–05. Rule 402 states the general rule of admissibility of relevant evidence which is defined as that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Wyo.R.Evid. 401. Under Rule 403, however, the trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Under Rule 404, as explained in *Coleman*, appears "the common law rule that evidence of a person's character or trait of character generally is not sufficiently relevant to justify its admission, without a balancing by the trial court of probative value against countervailing considerations." *Coleman*, 741 P.2d at 102. Under Rule 404(b), this court has consistently approved the legitimate use of uncharged misconduct evidence when offered for one or more of the purposes deemed permissible under that rule. Those purposes include but are not limited to motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Wyo.R.Evid. 404(b). Other permissible, albeit unenumerated, purposes under the rule include victim corroboration [1] and course of conduct.[2]

◼ We afford deference to the trial court's determination that uncharged misconduct evidence is admissible pursuant to Wyo. R.Evid. 402, 403, and 404. As long as a legitimate basis exists for the trial court's ruling of admissibility, we shall not hold that the trial court abused its discretion in admitting the evidence. *Wehr v. State*, 841 P.2d 104, 108 (Wyo.1992).

◼ Of the five-factor analysis in *Bishop*, appellant's appeal focuses on only two, *viz.*, purpose and materiality. He contends that the prosecution's stated purposes of motive and identity were bogus in that motive is not an element of the crime charged and identity was not a disputed material issue. Our reading of the second-degree sexual assault statute and the information in this case reveals that this case, like the typical prosecution case, is reducible to three elements: (1) someone committed the criminal act (*actus reus*) alleged in the information, *i.e.*, intrusion of the perpetrator's finger inside the victim's vagina; (2) the perpetrator possessed the requisite guilty state of mind (*mens rea*); *i.e.*, for the purpose of sexual arousal, gratification, or abuse; and (3) the perpetrator was the defendant (identity). *See*, EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 3.01 at 3 and § 4.01 at 2 (1992 & Supp.1993). In this particular prosecution, the accused pleaded not guilty, defending on the ground that the crime charged never happened. He asserted the victim had fabricated the allegations. He did not offer to stipulate to any of the three essential elements of the crime charged, such as the occurrence of the criminal act and the perpetrator's possession of the requisite guilty state of mind, while still disputing the identity element. By defending on the ground that the charged crime never happened, the accused necessarily put into material dispute each of the three elements of the charged crime. To accord the accused due process, the prosecution had to prove each one of the three essential elements of the charged crime beyond a reasonable doubt.

◼ Appellant maintains that motive is not an element of the charged crime. That is certainly true; however, the prosecution is permitted to prove the accused's motive to identify the accused as the perpetrator of the

**1.** See, e.g., *Rivera v. State*, 840 P.2d 933 (Wyo. 1992); *Gezzi v. State*, 780 P.2d 972 (Wyo.1989); and *State v. Koch*, 64 Wyo. 175, 189 P.2d 162 (1948).

**2.** See, e.g., *Frenzel v. State*, 849 P.2d 741 (Wyo. 1993); *Brown v. State*, 817 P.2d 429 (Wyo.1991);

*Schwenke v. State*, 768 P.2d 1031 (Wyo.1989); *Ramirez v. State*, 739 P.2d 1214 (Wyo.1987); *Makinen v. State*, 737 P.2d 345 (Wyo.1987); *Scadden v. State*, 732 P.2d 1036 (Wyo.1987); *Vasquez v. State*, 623 P.2d 1205 (Wyo.1981); and *State v. Koch*, 64 Wyo. 175, 189 P.2d 162 (1948).

charged crime. Noted evidence scholar Professor Imwinkelried explains:

> Motive is not an ultimate fact or element of the crime; rather it is an intermediate, evidentiary fact. The courts have variously described the concept of motive as the "reason that nudges the will and prods the mind to indulge the criminal intent," an "inducement or state of feeling that impels and tempts the mind to indulge in a criminal act," and "the moving force which impels to action for a definite result." While intent accompanies the actus reus, the motive comes into play before the actus reus. The motive is a cause, and the actus reus is the effect.

IMWINKELRIED, *supra*, § 3.15 at 35–36. He continues:

> [T]hat the defendant had a motive for that particular crime increases the inference of the defendant's identity. Many other persons presumably had no motive, and the defendant's motive raises the probability of defendant's identity. * * * It is ideal if the defendant is the only person with such a motive. At the other extreme, if the motivation is almost universal such as a general sexual desire, proof of the motive has little or no probative value on the issue of identity. In the motive cases * * * the courts do not insist that the motive be truly unique to the defendant. The courts assume that motive has strong probative value because a motive naturally leads to action. If the motive is not universal but shared by many other persons, the courts tend to admit the proof of motive.

*Id.* at 36.

Uncharged misconduct evidence offered to prove motive is found in two forms. *Id.* "In one form * * * the act of uncharged misconduct supplies the motive for the charged crime." *Id.* A concrete example of this form is the defendant's committing murder to eliminate a witness to the defendant's uncharged misconduct. *Id.* at 39. The second form, which is the form with which we are concerned in this case, is described in this way:

> [T]he act of uncharged misconduct evidences the motive; the motive again is the cause, the uncharged act is one effect, and the uncharged act tends to show the motive that produces the charge[d] act, the other effect. Both crimes are explainable as a result of the same motive.

*Id.* at 39.

Further explaining this second form, Professor Imwinkelried states:

> The courts typically invoke this theory of relevance when the motive is in the nature of hostility, antipathy, hatred, or jealousy. When the evidence is offered to identify the defendant, the emotion must be directed at the victim or a defined class which included the victim. The prosecutor's case for admissibility is strongest when the sole object of the [emotion] is the victim. * * * However, the courts have also admitted evidence of acts evidencing [emotion] against a class which included the victim. * * * There must be some relationship between all the victims. Otherwise, the evidence would show only the defendant's general [emotional] nature and violate the prohibition in the first sentence of Rule 404(b).

*Id.* at 46.

Against this backdrop, we have considered appellant's argument in light of this court's substantial body of uncharged misconduct evidence jurisprudence. We have upheld the admissibility of uncharged similar sexual misconduct or child abuse to prove identity in *Rivera v. State,* 840 P.2d 933 (Wyo.1992) (victims of uncharged similar sexual misconduct of same gender as victims of charged sexual misconduct); *Brown v. State,* 817 P.2d 429 (Wyo.1991) (familial relationship existed between victims of uncharged similar sexual misconduct and victim of charged sexual misconduct); *Longfellow v. State,* 803 P.2d 848 (Wyo.1990) (familial relationship existed between victim of uncharged child abuse and victim of charged child abuse); *Marker v. State,* 748 P.2d 295 (Wyo.1988) (accused's uncharged possession of sadomasochistic literature admissible to prove identity of accused as perpetrator of charged sexual misconduct toward accused's child); and *Grabill v. State,* 621 P.2d 802 (Wyo.1980) (familial relationship existed between victims of un-

charged child abuse and victim of charged child abuse).

We have upheld the admissibility of uncharged similar sexual misconduct or child abuse to prove motive in *Rivera; Brown,* 817 P.2d 429 (Wyo.1991); *Brown v. State,* 736 P.2d 1110 (Wyo.1987) (familial relationship existed between female victim of uncharged sexual misconduct and female victim of charged sexual misconduct); *Carey v. State,* 715 P.2d 244 (Wyo.1986), *cert. denied,* 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (victims of uncharged sexual misconduct of same gender as victims of charged sexual misconduct); *Evans v. State,* 655 P.2d 1214 (Wyo. 1982) (victim of uncharged sexual misconduct of same gender as victim of charged sexual misconduct); *Grabill; Elliott v. State,* 600 P.2d 1044 (Wyo.1979) (familial relationship existed between female victim of uncharged sexual misconduct and female victim of charged sexual misconduct); and *Strand v. State,* 36 Wyo. 78, 252 P. 1030 (1927) (uncharged similar sexual misconduct toward daughter admissible to prove accused's lustful disposition toward same victim in charged sexual misconduct).

Of our motive cases, we look to *Elliott* and *Brown,* 736 P.2d 1110, in addressing appellant's concerns. In *Elliott,* the prosecution charged the defendant with second-degree sexual assault of his nine-year old stepdaughter. The defendant denied the charge and alleged his stepdaughter was lying because her mother and the defendant were having marital problems. The trial court allowed the prosecution to introduce, for the purpose of proving the defendant's motive, the defendant's sexual assault of an older stepdaughter that occurred three years earlier. In reaching the conclusion that the trial court's evidentiary ruling was not error, we discussed the concept of motive in criminal law and applied that concept in the context of the facts presented. *Elliott,* 600 P.2d at 1048. We noted that motive is that which leads the mind to indulge in a criminal act. *Id.* Favorably referring to *State v. Bond,* 12 Idaho 424, 86 P. 43 (1906), we observed that "motive is an inferential fact which may be inferred from any previous occurrences having reference to and connected with the commis-

sion of the offense." *Elliott,* 600 P.2d at 1048. Applying these concepts to the facts presented, we noted the obvious evidentiary conflict between the victim and the alleged perpetrator. On the one hand, the victim testified that criminal conduct occurred; on the other hand, the accused testified no such conduct occurred and attributed to the victim a motive for testifying falsely. *Id.* We then remarked:

> Given this evidentiary conflict a finder of fact would be extremely interested in other information that might be available to help resolve the ultimate issue. Evidence of motive would be such information. One who is a paraphiliac, whose preference or addiction for unusual sexual practices occurs in the form of pedophilia, could well be recognized as having a motive to commit the acts complained of by the victim. The fact finder could infer from the acts complained of by the older sister that Elliott was so motivated. Such information would be helpful to any professional in determining whether Elliott was so afflicted. We conclude that on this basis the conduct described by the older sister in her testimony passes the test of relevancy under Rule 404(b), W.R.E., and was admissible for the purpose of proving the motive of the appellant.

*Elliott,* 600 P.2d at 1048–49 (citations omitted). *Elliott* appears dispositive of appellant's first claimed error.

In *Brown v. State,* 736 P.2d 1110, the prosecution charged the defendant with sexual intrusion or contact with his fifteen-year old daughter. Over the defendant's objection, the prosecution introduced the testimony of the victim's half-sister who described the defendant's sexual contact with her several years earlier. Holding no evidentiary error occurred, this court noted that motive was an issue that could be established by the testimony of the victim's half-sister. Also,

> [i]ncest involves aberrant sexual behavior—it is a type of sexual deviancy that is difficult to understand. Therefore, a trier of fact might well wonder what would motivate the accused to behave in such bizarre manner. The evidence of prior sexual acts then was probative under the mo-

tive exception because of the unusual sexual behavior involved.

\* \* \* \* \* \*

If the accused had a predilection to deviant sexual practices with young female relatives, it would not be unreasonable for the trier of fact to determine that he had a motive to commit the acts complained of by the victim in this case.

Consistent with our holding in *Elliott*, we determine the admission of testimony regarding conduct of appellant described by the victim and her older sister was justified as proof of motive and was sufficiently similar to meet the relevancy requirements of Rule 404(b).

*Brown*, 736 P.2d at 1113. *Brown* also appears dispositive of appellant's first claimed error.

With respect to the intent (*mens rea*) element of the charged crime, appellant asserts that the appellant's sexual arousal or gratification is not an element of the charged crime of second-degree sexual assault. We disagree. Quite clearly, the statutory language requires that the intrusion of the victim's genital opening be "for the purposes of sexual arousal, gratification, or abuse." Wyo. Stat. § 6–2–301(a)(vii)(A). According to Professor Inwinkelried,

[t]he better view is that uncharged misconduct can be relevant and admissible to prove intent in both general and specific intent cases. This view is the trend in the case law and the predominate sentiment among the commentators. So long as the jurisdiction's substantive criminal law defines the charged crime as including even a general mens rea element, the prosecution must prove the existence of that mens rea beyond a reasonable doubt. The due process clause requires proof of all the essential elements of the crime by that standard. Moreover, under Rule 401, uncharged misconduct can unquestionably be logically relevant to prove a general mens rea. \* \* \* [I]t is unsound to routinely exclude uncharged acts offered to prove a general mens rea for the stated reason that the acts are logically irrelevant.

Imwinkelried, § 5.09, at 23. *And see, State v. Means*, 363 N.W.2d 565, 568 (S.D.1985) (prosecuted under a South Dakota statute worded similarly to the Wyoming second-degree sexual assault statute, the accused denied the alleged sexual touching and claimed his denial removed the question of his intent in making physical contact; *held* accused's denial of touching does not relieve the prosecution of the burden of proving both contact and the requisite intent to arouse or produce sexual gratification); *accord, State v. Champagne*, 422 N.W.2d 840, 843–44 (S.D. 1988). Other jurisdictions also uphold the trial court's admission of uncharged sexual misconduct evidence to prove motive, intent, and identity in charged sexual misconduct cases. *See generally, Free v. State*, 293 Ark. 65, 732 S.W.2d 452 (1987); *State v. Keithley*, 218 Neb. 707, 358 N.W.2d 761 (1984); *Findley v. State*, 94 Nev. 212, 577 P.2d 867 (1978); *State v. Friedrich*, 135 Wis.2d 1, 398 N.W.2d 763 (1987); *cf. Soper v. State*, 731 P.2d 587 (Alaska App.1987) (recognizing and applying "lewd disposition" exception in cases in which uncharged sexual misconduct evidence is substantially similar and victims of both the uncharged acts and the charged acts share highly relevant common characteristics); *State v. Lachterman*, 812 S.W.2d 759 (Mo. App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992) (recognizing and applying "depraved sexual instinct" exception); and *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990) (recognizing and applying "lustful disposition" exception); *but cf., Lannan v. State*, 600 N.E.2d 1334, 1338–39 (Ind.1992) (abandoning Indiana's long-settled "depraved sexual instinct" exception in favor of Fed.R.Evid. 404(b)); and *Pendleton v. Commonwealth*, 685 S.W.2d 549, 552 (Ky.1985) (rejecting "lustful disposition" purpose but recognizing usual Rule 404(b) purposes).

Evaluating the alleged evidentiary error in the instant case in the light of our past decisions, we find no reason to depart from the reasoning of those past decisions. We hold that the trial court did not abuse its discretion in ruling that the uncharged misconduct evidence was relevant.

Although the record does not disclose a specific consideration by the trial court of

weighing the probative value of the uncharged sexual misconduct evidence against the danger of unfair prejudice under Wyo. R.Evid. 403, such consideration is implicit in the context of the trial court's ruling in light of the appellant's written and oral presentation on the evidentiary point in question. In *Elliott,* we remarked that "[t]he function of performing the comparisons required by Rule 403, W.R.E., generally is held to be discretionary with the trial court." *Elliott,* 600 P.2d at 1049.

In *Coleman,* 741 P.2d at 102–05, this court strongly suggested the use of a sequential process for the introduction of uncharged misconduct evidence by the prosecutor, defense counsel, and the trial court. In this process the proponent of the evidence must satisfy the trial court that the evidence is for a proper Rule 404(b) purpose and relevant and that the probative value of the proffered evidence is not substantially outweighed by the countervailing factors suggested in Rule 403; the objector then has the opportunity to challenge the proponent's argument in each respect; and then the trial court must articulate its decision about the purpose of the evidence, its relevancy, and the balancing of probative value and the countervailing factors.

 This court has served notice to bench and bar that henceforth the procedure of the introduction of uncharged misconduct evidence set forth therein is mandatory. *Dean v. State,* 865 P.2d 601, 609 (Wyo.1993). An integral part of that procedure is the trial court's articulation on the record of its findings of relevancy and how it weighed probative value against the countervailing considerations. *Dean,* 865 P.2d at 609 – 610. Since this mandatory procedure was not in place when the instant case was tried, we shall not impose its requirements to this case. Evaluating the uncharged misconduct evidence in the light of our past decisions, we cannot hold that the trial court abused its discretion within the context of Rule 403. Applying the

separate analyses required by Rules 404(b) and 403, we conclude that the evidence in question was properly admitted. *See Elliott,* 600 P.2d at 1049.

2. *Admission of Victim's Out-of-Court Statements.*

 Appellant's trial counsel did not object to the testimony of the county sheriff and the family services employee which related the ten-year old victim's statements to them when they interviewed her as part of their investigation which led to the prosecution's filing of charges against appellant. In the absence of the appropriate objection at trial, any claimed error on appeal must be reviewed under our plain error doctrine. *Frenzel,* 849 P.2d at 751; *Monn v. State,* 811 P.2d 1004, 1006 (Wyo.1991). Regrettably, appellant's appellate counsel has not presented a plain error analysis in his written brief.

 Notwithstanding the absence of a plain error analysis in appellant's appellate briefing, we have reviewed the claimed error under that analysis and have concluded that the admission of the victim's statements through the testimony of the two prosecution witnesses did not violate a clear and unequivocal rule of law in an obvious way. *Frenzel,* 849 P.2d at 751; *Monn,* 811 P.2d at 1006. Appellant's theory of defense at trial was that the victim was testifying falsely because she was angry with appellant for not allowing her to ride a certain horse at his parents' residence. The thrust of the cross-examination conducted by appellant's trial counsel on the prosecution's first two witnesses, the victim's mother and the victim, implied that the victim was testifying falsely. In *Frenzel,* 849 P.2d at 751; *Montoya v. State,* 822 P.2d 363 (Wyo.1991); and *Baum v. State,* 745 P.2d 877 (Wyo.1987), we held that Wyo.R.Evid. 801(d)(1)(B) [3] was not violated when the trial court admitted the victim's out-of-court statements under similar circumstances. The decisions are dispositive of the error claimed here. We hold that the trial court did not

---

**3.** Wyo.R.Evid. 801(d)(1)(B) reads:

(d) *Statements which are not hearsay.*—A statement is not hearsay if: (1)Prior Statement by Witness.—The declarant testifies at the trial or hearing and is subject to cross-examination

concerning the statement and the statement is * * * (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *.

abuse its discretion when it admitted the testimony of the two prosecution witnesses.

Affirmed.