**Wilbur John BROWER, a/k/a John Wilbur Brower, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 99–64.

Supreme Court of Wyoming.

March 21, 2000.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Michael Dinnerstein,* Assistant Appellate Counsel; John DeLeon, Student Intern. Argument by Mr. DeLeon.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jim Radda, Special Assistant Attorney General. Argument by Mr. Radda.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

GOLDEN, Justice.

Appellant Wilbur John Brower was convicted of two counts of taking immodest, immoral or indecent liberties with a child, his adopted daughter, in violation of Wyo. Stat. Ann. § 14–3–105. On appeal, he contends

* Order granting motion to withdraw as counsel signed May 18, 1999.

that the uncharged misconduct admitted into evidence through the testimony of another adopted daughter was inadmissible character evidence. He also claims that procedural irregularities at his sentencing hearing violated due process of law.

We affirm the order of judgment and sentence.

## ISSUES

The parties present the following issues for our review:

I. Did the court deprive Appellant of a fair trial by admitting prior bad act evidence and instructing the jury on its use in a manner that permitted the jury to conclude that Appellant must have committed the charged offense because he had committed similar bad acts in the past?

II. Did the court deprive Appellant of due process by refusing to grant a continuance of his sentencing even though a continuance was necessary for the Department of Probation and Parole to conduct an adequate presentence investigation?

## FACTS

Brower married his wife in 1984 and adopted four of her five children. The oldest, SC, refused to be adopted by him. In 1997, the Department of Family Services notified the Sublette County Sheriff's Department that SC and two other adopted daughters had reported sexual fondling by Brower. He was interviewed by a sheriff's detective, denied any wrongdoing, and claimed that the complaint was the result of the girls' anger at his strict discipline at home. Brower was charged with three counts of indecent liberties with a minor. The first count charged Brower with placing his hand under SC's clothes and on her breasts in October of 1985 when she was fourteen years old. The second count accused him of placing his hand under the clothes of EB, then 13 years old, and touching her breasts and thigh area in April of 1993. The last count accused him of placing his hand under EB's clothes and touching her breasts in April of 1997.

Before trial, the State filed notice of its intent to offer into evidence various uncharged acts of misconduct by Brower against SC and EB and a third sister, AB. The evidence included other inappropriate sexual contact against SC, including a kissing incident in February of 1985; physical and mental abuse of SC; Brower's threats to kill SC if she ever ran away from home; and Brower's killing of several pets. After briefing and a hearing, the district court excluded all of this evidence except the February, 1985, incident; however, at trial no testimony was elicited about the incident.

The evidence of uncharged acts committed by Brower against EB included inappropriate kissing; asking if she would sleep with him; physical abuse; threats to kill her if she made a sexual abuse accusation; and abusing and shooting her pet dogs. The district court excluded all of this proposed evidence but allowed EB to testify that between the ages of thirteen and seventeen she felt Brower's erect penis when she sat on his lap.

The district court did admit evidence of uncharged acts committed by Brower against AB, and at trial she testified that Brower had touched her breasts one morning as she awoke, rubbed her inner thigh, repeatedly touched her breasts when tickling her, threw her on the bed and pressed his body against her, touched her inappropriately, looked at her in inappropriate ways that made her feel uncomfortable, and made her sit on his lap on his erection. At the end of AB's testimony, the court gave the jury a limiting instruction that was repeated at the end of the case.

Brower presented a defense that denied any wrongdoing and attributed these accusations to interference by the children's natural father, Vernon Collins, and SC's dislike of Brower from the beginning of his marriage to the children's mother. Brower testified in his own defense and denied the accusations. He was acquitted on the charge involving SC but convicted on the two charges involving EB.

Following his conviction, a two-hour sentencing hearing was set for December 17, 1998. The State informs us that on November 18, 1998, the district court was advised

by the prosecutor that the probation officer preparing the presentence investigation report requested the hearing be postponed; the district court responded that it would not be in session again until late February and stated that a month should be sufficient for the completion of the presentence investigation. On November 25, 1998, defense counsel filed a motion for continuance based on the probation officer's request and a potential conflict in counsel's scheduling; however, defense counsel was able to attend the December 17 hearing. At the hearing, the district court, noting that Brower had received the presentence investigation report eight days earlier, specifically asked Brower if he would waive the ten-day notice requirement of W.R.Cr.P. 32(a)(3)(A). Brower and his counsel consented to waiving the requirement.

At the hearing, the probation officer who had prepared the presentence investigation report testified as to additional information that was not included in the report, specifically testifying that Brower had not received a sexual offender evaluation before sentencing. The court was advised that letters existed supporting Brower, and several witnesses testified on his behalf. After two hours of hearing testimony, the court sentenced Brower to concurrent terms of six to ten years imprisonment. This appeal followed.

## DISCUSSION

In his first issue, Brower complains that AB's testimony that he had molested her in a number of ways was improper character evidence to show his propensity to commit the charges involving SC and EB. Brower objected to the admission of the evidence.

■ W.R.E. 404 states:

(a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of Accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) Character of Victim.—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) Character of Witness.—Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404 "prohibits character evidence for the purpose of showing that the defendant acted in conformity with his 'bad character,' but permits the use of such evidence for other purposes." *Brown v. State*, 953 P.2d 1170, 1175 (Wyo.1998). "The key inquiry is whether the act tends to prove something other than propensity to commit the charged crime and, if so, whether relevancy outweighs the risk of prejudice." *Id.* at 1175–76. The specific test to determine if Rule 404(b) evidence is admissible is whether it is relevant evidence offered for a proper purpose; its probative value is not substantially outweighed by its potential for unfair prejudice; and a limiting instruction is given when requested. *Vigil v. State*, 926 P.2d 351, 357 (Wyo.1996) (citing *Huddleston v. United States*, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988)). A ruling on the admissibility of uncharged misconduct evidence is within the sound discretion of the trial court and entitled to considerable deference on appeal. *Brown*, 953 P.2d at 1175. As long as a legitimate basis exists for the trial court's ruling of admissibility, we shall not hold that the trial court abused its discretion in admitting the evidence. *Mitchell v. State*, 865 P.2d 591, 596 (Wyo.1993).

Brower contends that the uncharged misconduct was admitted for improper purposes.

As he points out, the admissibility of such evidence cannot be determined by rote invocation of a specified exception, but must be determined by a careful analysis of its relevance in the case. We have previously conducted the specified careful analysis of the relevance of uncharged misconduct to prove motive when a familial relationship exists between a female victim of uncharged sexual misconduct and female victim of charged sexual misconduct. *Id.* at 598. In *Mitchell,* the prosecution charged the defendant with second degree sexual assault of a ten-year-old girl. At trial, evidence was admitted that appellant had previously been convicted of second degree sexual assault of his three-year-old niece. The investigator of the case leading to the previous conviction testified that appellant had admitted the activity against his niece had sexually aroused him. *Mitchell* held that this evidence was properly admitted to prove motive, and that decision was consistent with this Court's previous decisions in *Elliott v. State,* 600 P.2d 1044, 1048–49 (Wyo.1979), and *Brown v. State,* 736 P.2d 1110, 1113 (Wyo.1987). *Mitchell,* 865 P.2d at 598–99.

In *Elliott,* the defendant was accused of sexual assault for having committed vaginal intercourse with his nine-year-old stepdaughter. We upheld admission of the testimony of the victim's older sister that the defendant had attempted to have sexual intercourse with her. *Elliott* noted that most courts admit the testimony of third persons concerning uncharged sexual misconduct to show motive or plan in cases involving sexual assaults with family members as the victims. *Elliott,* 600 P.2d at 1047–48. When the accused denies any wrongdoing, an evidentiary conflict exists between the victim and the accuser, and evidence of motive assists a jury in resolving the ultimate issue. *Id.* at 1048–49. If the motive at issue is that of a preference for unusual sexual practice in the form of pedophilia, the uncharged sexual misconduct could assist the trier of fact in determining whether the accused was so motivated. *Id.* at 1049. Similarly, *Brown* determined that, in the case of incest, uncharged sexual misconduct against another member of the family would assist the trier of fact in understanding the unusual sexual behavior involved. *Brown,* 736 P.2d at 1113. In 1992, this Court decided *Britton v. State,* 845 P.2d 1374 (Wyo.1992). Britton was accused of sexually assaulting his fifteen-year-old son by anal intercourse. We upheld admission of testimony from Britton's stepdaughter that Britton had sexually abused her eight years earlier by acts of sexual intercourse and oral sex, finding that the uncharged sexual misconduct showed deviant sexual behavior. *Id.* at 1376.

██ *Mitchell* held that uncharged sexual misconduct is relevant when the accused denies any wrongdoing if it tends to show that the defendant is motivated by other than a general sexual desire. *Mitchell,* 865 P.2d at 598–99. In a pretrial statement, Brower denied any sexual misconduct against his eldest stepdaughter, SC, and his younger stepdaughter, EB, both of whom had accused him of illegal sexual contact when they were teenagers, and during trial, Brower testified and denied any wrongdoing. AB's testimony established that Brower had also subjected her, the middle sister, to the same sexual contact when she too had reached her teen years. Our previous decisions establish that sexual behavior with a defendant's minor children, adopted children, or step-children is unusual sexual behavior permitting admission of uncharged misconduct evidence to prove motive when the accused denies that the charged conduct ever occurred. We find no error in the admission of AB's testimony.

### Sentencing Hearing

Brower next claims that the trial court's failure to grant a requested continuance when the probation officer requested more time caused the exclusion of letters supporting leniency and deprived him of a recommended sexual offender evaluation. He contends that sentencing him upon an inadequate presentence investigation violates due process of law and requires vacating his sentence and remanding for resentencing. The State contends that because all information was presented and considered at the sentencing hearing, Brower suffered no prejudice warranting a new sentencing hearing.

W.R.Cr.P. 32 provides, in pertinent part:

(a) *Presentence Investigation.—*

(1) When Made.—In every felony case the Department of Probation and Parole shall conduct a presentence investigation and submit a report to the court. The court may order an investigation and report in misdemeanor cases. In felony cases the investigation and report may not be waived but, with the parties' consent, the court may permit the report to be filed after sentencing. Otherwise, it shall be considered by the court before the imposition of sentence or the granting of probation. Except with the written consent of the defendant, the report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty.

(2) Report.—The report of the presentence investigation shall contain:

(A) Information about the history and characteristics of the defendant, including prior criminal record, if any, financial condition, and any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in the correctional treatment of the defendant;

\* \* \*

(3) Disclosure.

(A) At least 10 days before imposing sentence, unless this minimum period is waived by the defendant, the court shall provide the defendant and the defendant's counsel with a copy of the report of the presentence investigation, including the information required by subdivision (a)(2). The court shall afford the defendant and the defendant's counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

(B) Any material which may be disclosed to the defendant and the defendant's counsel shall be disclosed to the attorney for the state.

(C) If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make:

(i) A finding as to the allegation; or

(ii) A determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to penal institutions.

\* \* \*

(c) *Sentence.—*

(1) Imposition.—Sentence shall be imposed without unnecessary delay, but the court may, when there is a factor important to the sentencing determination that is not then capable of being resolved, postpone the imposition of sentence for a reasonable time until the factor is capable of being resolved. Prior to the sentencing hearing, the court shall provide the counsel for the defendant and the attorney for the state with a copy of the probation officer's report. Pending sentence, the court may continue or alter the defendant's bail or may confine the defendant. At the sentencing hearing, the court shall afford the counsel for the defendant and the attorney for the state an opportunity to comment upon the probation officer's report and on other matters relating to the appropriate sentence. Before imposing sentence, the court shall also:

(A) Determine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report made available pursuant to subdivision (a)(3)(A);

(B) Afford counsel for the defendant an opportunity to speak on behalf of the defendant; and

(C) Address the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence.

The plain language of the rule gives the district court discretion to include any information which may aid it in the task of imposing a fair sentence in light of all the available facts without limitation. *Hornecker v. State,* 977 P.2d 1289, 1292 (Wyo.1999). A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play. *Smith v. State,* 941 P.2d 749, 750 (Wyo.1997); *Wayt v. State,* 912 P.2d 1106, 1109 (Wyo. 1996).

■ Our review of the record reveals that the sentencing court had before it a presentence investigation report that contained information about the history and characteristics of the defendant, his lack of a prior criminal record, his financial condition, and other circumstances. The report stated that because Brower was not seeking sex offender treatment, probation was not recommended. During the sentencing hearing, defense counsel pointed out minor errors in the report and called the probation officer that prepared the report to testify that letters supporting Brower had been excluded and that a sexual offender evaluation recommended by a social worker who personally knew Brower had not occurred. The officer testified that a sexual offender evaluation would have examined the "individual to determine what he thinks happened," and that it could be useful to the Court before passing sentence. On cross-examination, he testified that Brower had not requested such an evaluation, and if a request had been made it may have been possible to complete the evaluation before hearing.

Brower did not request the evaluation in his motion for continuance, to the probation officer during preparation of the presentence investigation report, or at sentencing. He did not claim or specify what prejudice would occur in either his continuance motion or during the sentencing hearing should the court determine sentence without benefit of this information. On appeal, he does not specify or explain the benefit that he would have derived from a sexual offender evaluation and what impact it potentially held for the ultimate sentencing determination. Under these circumstances, we find no procedural violation of W.R.Cr.P. 32 occurred because these showings were not made. We further find that these circumstances establish that Brower suffered no prejudice when the district court proceeded with sentencing without the evaluation. The judgment and sentence is affirmed.